59 S.W.3d 260 (2001)
Jessie Lee WASHINGTON, Appellant,
v.
The STATE of Texas, Appellee.
No. 06-01-00020-CR.
Court of Appeals of Texas, Texarkana.
Submitted August 17, 2001.
Decided August 24, 2001.
*261 David S. Barron, Bryan, for appellant.
Bill R. Turner, Brazos County District Attorney, Douglas Howell III, Assistant District Attorney, Bryan, for appellee.
Before CORNELIUS, C.J., GRANT and ROSS, JJ.

OPINION
Opinion by Chief Justice CORNELIUS.
A jury convicted Jessie Lee Washington of sexual assault. Washington pleaded *262 true to the State's allegation that he had previously been convicted of a felony, and the jury assessed his punishment at confinement for life.
In his first issue on appeal, Washington challenges the legal sufficiency of the evidence. In reviewing the legal sufficiency of the evidence, we determine whether after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Lane v. State, 933 S.W.2d 504, 507 (Tex.Crim.App.1996). We evaluate all of the evidence in the record, both direct and circumstantial, and whether admissible or inadmissible. Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim.App.1993).
Washington contends the evidence is legally insufficient because there is a variance between the indictment and the proof at trial. The indictment alleged that Washington sexually assaulted M.L. He contends the State failed to prove that the victim, whose initials are M.L. and whose full legal name was used at trial, was known as M.L. or that M.L. is a pseudonym.
A variance between the indictment and the evidence may be fatal to a conviction because due process guarantees that the defendant have notice of the charges against him. Rojas v. State, 986 S.W.2d 241, 246 (Tex.Crim.App.1998). However, only a material variance is fatal. In determining whether a variance is material, we determine whether the indictment informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial and whether prosecution under the indictment as drawn would subject the defendant to the risk of being prosecuted later for the same crime. Gollihar v. State, 46 S.W.3d 243, 257 (Tex.Crim.App.2001) (citing United States v. Sprick, 233 F.3d 845, 853 (5th Cir.2000)).
Article 57.02(b) of the Texas Code of Criminal Procedure permits a victim to choose a pseudonym to be used in all public files, records, and legal proceedings concerning the offense. Tex.Code Crim. Proc. Ann. art. 57.02(b), (f) (Vernon Supp. 2001). A victim who elects to use a pseudonym must complete a pseudonym form and return it to the law enforcement agency investigating the offense. Tex.Code Crim. Proc. Ann. art. 57.02(b). The victim's name may be disclosed only to the defendant and his attorney; disclosure to anyone else requires a court order. Tex.Code Crim. Proc. Ann. art. 57.02(d), (g) (Vernon Supp.2001).
The fatal variance doctrine is inapplicable to pseudonym cases as long as the defendant's due process right to notice is satisfied. See Stevens v. State, 891 S.W.2d 649, 651 (Tex.Crim.App.1995). In the present case, the record does not indicate whether the victim filed a pseudonym form, and as noted earlier, the parties used her full legal name at trial. In Stevens, also, there was no indication that the victim filed a pseudonym form, and the parties used her full name at trial. Id. at 650.
Washington says Stevens is distinguishable because, in that case, the victim's name was alleged to be XXXXXX-XXXXXX, an obvious pseudonym that the court concluded accomplished the dual purposes of protecting the defendant's due process right to notice and the victim's right to privacy. Id. at 651 n. 2. The court expressed no opinion, however, concerning whether a due process violation would occur if, as here, the State alleged a less obvious or nonnumeric pseudonym.
*263 The pseudonym M.L., is an obvious pseudonym such that the fatal variance doctrine and Washington's due process right to notice are not implicated. Even if M.L. were not an obvious pseudonym, however, the variance in the indictment is not material.
In Stevens, the Texas Court of Criminal Appeals held that the variance was not material because the State disclosed the victim's name in response to pretrial discovery requests and in its notice of intent to use outcry witness testimony. Stevens v. State, 891 S.W.2d at 650-51. In addition, the defendant used the victim's name in pretrial filings and both parties used the victim's name at a pretrial hearing.
In Greeno v. State, 46 S.W.3d 409, 412 (Tex.App.-Houston [14th Dist.] 2001, no pet. h.), the indictment alleged the defendant committed aggravated sexual assault of two children, J.G. and T.G. Two children testified at trial, both of whom had the initials J.G. Nevertheless, the court of appeals held that the defendant failed to show surprise because the victims were the appellant's own children and he used their legal names in his pretrial motions.
In Graves v. State, 994 S.W.2d 238, 245 (Tex.App.-Corpus Christi 1999, pet. ref'd), and Hernandez v. State, 943 S.W.2d 930, 937 (Tex.App.-El Paso 1997), rev'd on other grounds, 988 S.W.2d 770 (Tex. Crim.App.1999), the State informed the defendant of the victim's legal name before trial.
Washington contends the explicit notifications given in Stevens, Graves, and Hernandez were not given here. He also contends that in contrast with Stevens, there is no indication he was made aware of the victim's legal name through pretrial filings or pretrial hearings. Further, in contrast to Greeno, the evidence showed that Washington was not related to the victim and that he did not know her. Moreover, Washington contends we cannot infer from a silent record the lack of surprise necessary to show a nonmaterial variance. He cites Stevens' discussion of the indications in the record that the defendant knew the victim's name and posits that such a discussion would have been unnecessary if the court believed the defendant was required to object to show surprise.
The record in the present case is not completely silent, however. At a pretrial hearing, Washington's attorney admitted the State provided him with copies of all medical records, laboratory reports, and photographs. State's exhibit six was a sexual assault kit containing the victim's legal name. In addition, two scraps of paper, both of which contained the victim's first name and a telephone number, were found in Washington's pocket when he was arrested.
More significantly, we believe lack of surprise can be inferred from a silent record, as the defendant could reasonably be expected to protest if the victim's name were not properly disclosed. This question was not addressed in Stevens because in that case there were stronger indications than are present here that the defendant was aware of the victim's identity. The Texas Court of Criminal Appeals has observed in one case that there was no indication in the record that the defendant did not know which go-cart the State alleged he stole, or that he was misled by the allegation that he stole a go-cart with a model number different from the one the State proved at trial, or that his ability to prepare an adequate defense was impaired. Gollihar v. State, 46 S.W.3d at 258.
Washington never objected at trial that he was unaware of the victim's name or that he was unable to prepare an adequate defense. He did not raise mistaken identity *264 or alibi as issues in his defense; rather, his defense was that the victim consented to the sexual contact.
Further, there is no risk that Washington is susceptible to prosecution for the same crime. M.L. testified that Washington assaulted her, and DNA evidence was admitted showing that Washington had sexual contact with M.L.
In his second issue on appeal, Washington contends the trial court erred by instructing the jury in the punishment phase that "the punishment authorized for this offense is confinement ... for not more than ninety-nine (99) years or life and not less than five (5) years ... [and] a fine not to exceed $10,000." This is the punishment range for a first-degree felony. Tex. Pen.Code Ann. § 12.32 (Vernon 1994). Sexual assault is a second-degree felony; however, Washington pleaded true to the enhancement allegation, which enhanced the punishment range for the offense to that of a first-degree felony. See Tex. Pen.Code Ann. §§ 12.42(b), 22.011(f) (Vernon Supp.2001).
In Harvey v. State, 611 S.W.2d 108, 112 (Tex.Crim.App.1981) (op. on reh'g), the Texas Court of Criminal Appeals held:
Where one prior conviction is alleged in the indictment for enhancement purposes and the accused chooses to enter a plea of "true" or "guilty" to the allegation at the punishment stage of the trial, then it is permissible for the trial court to charge the jury on punishment as though the primary offense, for which the accused has been convicted, carries the enhancement punishment.... It is not necessary for the trial court to charge alternatively in that instance, that is, where the accused pleads "true," or "guilty," on the various ranges of punishment for the primary offense, where there is one prior conviction alleged for enhancement.
Washington acknowledges Harvey, but invites us to reconsider it in light of language in Hutch v. State, 922 S.W.2d 166, 170 (Tex.Crim.App.1996), that "the purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case." We find that Hutch is consistent with Harvey insofar as Harvey is the applicable law in Texas, and the jury charge in the present case is consistent with Harvey's requirements.
Washington also seeks to distinguish Harvey because there the appellant did not contend that the charge implicated the Due Process Clause of the Fifth Amendment to the United States Constitution or the due course of law provision of Article I, § 19 of the Texas Constitution. He argues that the charge, as worded, is an incorrect statement of the law because he was convicted of a second-degree felony.
The charge does not contain an incorrect statement of the law. It informs the jury of the appropriate punishment authorized for the offense. The law requires that a defendant who has been convicted of a second-degree felony "shall be punished for a first-degree felony" if it is shown that he has been previously convicted of a felony. Tex. Pen.Code Ann. § 12.42(b). When the defendant pleads true to the enhancement allegation, the State's burden of proving the prior felony conviction is removed. Harvey v. State, 611 S.W.2d at 111. Once a finding of true to the enhancement paragraph has been made, the punishment range is absolutely fixed by law. State v. Allen, 865 S.W.2d 472, 474 (Tex.Crim.App.1993).
Even assuming the jury charge contained an incorrect statement of the law, there is no indication that Washington suffered harm. Because he did not object to the jury charge, any error is reversible *265 only if he shows that it caused him egregious harm. Abdnor v. State, 871 S.W.2d 726, 732 (Tex.Crim.App.1994). In determining whether egregious harm occurred, we review the error in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, the argument of counsel, and all other relevant evidence revealed by the record as a whole. Skinner v. State, 956 S.W.2d 532, 544 (Tex.Crim.App.1997) (quoting Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim. App.1984) (op. on reh'g)). Errors resulting in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory. Hutch v. State, 922 S.W.2d at 171 (citing Almanza v. State, 686 S.W.2d at 171).
Washington speculates that "the jury was naturally left with the impression that the enhancement paragraph could be considered (and further punishment assessed) in addition to the erroneous range of punishment stated in the court's charge." However, as the State observes, the prospective jurors were asked during voir dire whether they could consider the punishment range for a second-degree felony, and if it were shown that the defendant had a prior felony conviction, whether they could consider the punishment range for a first-degree felony. In addition, during his closing argument at the punishment phase, Washington's attorney referred the jury to the charge and told it that "the punishment range in this case is five to ninety-nine years or life." Further, the jury charge informed the jury of the range of punishment, and the verdict form, which was signed by the presiding juror, instructed it to assess a punishment of life or not more than ninety-nine years nor less than five years, and a fine between zero and $10,000.00.
In his third issue on appeal, Washington contends the trial court erred in instructing the jury at the punishment phase about the impact of good conduct time on his eligibility for early release. Washington says this was error because any good conduct time he accrues will not make him eligible for early release. The jury was given a charge substantially similar to the mandatory charge required by Tex.Code Crim. Proc. Ann. art. 37.07, § 4(b) (Vernon Supp.2001). The actual jury charge reads as follows:
Under the law applicable in this case, the defendant may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.
It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.
Under the law applicable in this case, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed or 15 years, whichever is less. Eligibility for parole does not guarantee that parole will be granted.
It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.
You may consider the existence of the parole law and good conduct time. *266 However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.
Washington did not object to this charge. In his fourth issue on appeal, he contends he received ineffective assistance of counsel because his attorney did not object to the charge.
Washington contends the trial court erred in giving the charge because any good conduct time will not affect his eligibility for parole. The charge, however, is mandatory, and the trial court had no discretion to ignore the statutory requirement. Tex.Code Crim. Proc. Ann. art. 37.07, § 4(b); Edwards v. State, 10 S.W.3d 699, 702-03 (Tex.App.-Houston [14th Dist.] 1999, pet. granted).
Washington also contends the mandatory charge prescribed by Article 37.07, § 4(b) violates his right to due process and due course of law under the United States and Texas Constitutions. As we understand his argument, Washington is complaining that the trial court's instruction that he "may earn time off the period of incarceration imposed through the award of good conduct time" was incorrect and misleading as applied to him.
Washington's parole eligibility is governed by Tex. Gov't Code Ann. § 508.145(f) (Vernon Supp.2001),[1] which provides in relevant part, "[A]ny other inmate is eligible for release on parole when the inmate's actual calendar time served plus good conduct time equals one-fourth of the sentence imposed or 15 years, whichever is less."[2] Because the jury gave him a life sentence, any good conduct time he earns will not affect his eligibility for parole. Nevertheless, the charge as given correctly states the effect good conduct time would have on Washington's parole eligibility given the possible punishments the jury could assess. For instance, had the jury assessed his punishment at twenty years' confinement, Washington would have been eligible for parole when his actual calendar time served, plus any good conduct time he earned, equaled five years. Thus, the jury could not have been *267 misled by the jury charge.[3]
Washington also cites Jimenez v. State, 992 S.W.2d 633, 637-38 (Tex.App.-Houston [1st Dist.] 1999), aff'd on other grounds, 32 S.W.3d 233 (Tex.Crim.App. 2000), in which the court of appeals held that the charge required by Tex.Code Crim. Proc. Ann. art. 37.07, § 4(a) (Vernon Supp.2001), which is similar to the charge at issue here, was unconstitutional as applied to the defendant because it misinformed the jury about the effect of good conduct time on the defendant's release to mandatory supervision. The Jimenez court reasoned that the purpose of the jury charge is to guide the jury and prevent confusion. Jimenez v. State, 992 S.W.2d at 638. It held that the jury charge must contain a correct statement of the law and that the trial court should tailor the charge to apply to the facts of the specific case. The court concluded, however, that the error was harmless.
In contrast to Jimenez, several courts have held that the instruction in Article 37.07, § 4(a) is not misleading regarding the eligibility of defendants like Washington for release to mandatory supervision. Espinosa v. State, 29 S.W.3d 257, 261 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd); Cagle v. State, 23 S.W.3d 590, 594 (Tex.App.-Fort Worth 2000, pet. filed); Martinez v. State, 969 S.W.2d 497, 500 (Tex.App.-Austin 1998, no pet.); see also Edwards v. State, 10 S.W.3d at 705 (holding that Article 37.07, § 4(a) did not unconstitutionally mislead the jury about the effect of good conduct time on the defendant's eligibility for parole); Luquis v. State, 997 S.W.2d 442, 443 (Tex.App.-Beaumont 1999, pet. granted) (same); Garcia v. State, 911 S.W.2d 866, 868 (Tex. App.-El Paso 1995, no pet.) (same).
We are persuaded that the instruction in Article 37.07, § 4(b) is not misleading as applied to Washington. The jury instruction does not even mention mandatory supervision. Further, the jury was instructed not to consider the extent to which good conduct time may be awarded to Washington. Finally, the jury was informed only that the defendant may earn time off the period of his incarceration through the award of good conduct time. If the jury followed these instructions, as we must presume it did, see Williams v. State, 937 S.W.2d 479, 490 (Tex.Crim.App.1996), it could only conclude that Washington might receive credit for good conduct time, but that he might not, and that it would be improper to speculate whether he would actually receive any good conduct time. Having concluded the jury charge was not unconstitutional as applied to Washington, we overrule his third and fourth issues on appeal.
The judgment is affirmed.
NOTES
[1] Washington cites Tex.Code Crim. Proc. Ann. art. 42.18, § 8(c)(5) as the law governing his eligibility for parole. Evidently, he is referring to Tex.Code Crim. Proc. Ann. art. 42.18, § 8(b)(5), because Article 42.18, § 8(c)(5) prohibited the eligibility of an inmate for release to mandatory supervision if the inmate were serving a sentence for second-or first-degree felony aggravated assault. See Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 6.02, 1993 Tex. Gen. Laws 3761, repealed by Act of May 8, 1997, 75th Leg., R.S., ch. 165, § 12.22, 1997 Tex. Gen. Laws 443 (current version at Tex. Gov't Code Ann. § 508.149(a)(7) (Vernon Supp.2001)). Article 42.18, § 8(b)(5) was repealed before the date the offense in the present case was committed (February 26, 1999) and was reenacted in substantially the same form as Tex. Gov't Code Ann. § 508.145(f) (Vernon Supp.2001); see Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 6.01, 1993 Tex. Gen. Laws 3761, repealed by Act of May 8, 1997, 75th Leg., R.S., ch. 165, § 12.22, 1997 Tex. Gen. Laws 443 (current version at Tex. Gov't Code Ann. § 508.145(f)).
[2] Washington's parole eligibility is not governed by any of the other provisions of Tex. Gov't Code Ann. § 508.145 (Vernon Supp. 2001) because he was not sentenced (1) to death, (2) to life imprisonment for a capital felony, or (3) to life imprisonment under Tex. Pen.Code Ann. § 12.42(c)(2) (Vernon Supp. 2001), and because he did not commit (4) an offense described in Tex.Code Crim. Proc. Ann. art. 42.12, § 3g(a)(1)(A) & (C)-(H) (Vernon Supp.2001), (5) an offense for which the judgment contains an affirmative deadly weapon finding, or (6) an offense for which the punishment was increased under Tex. Health & Safety Code Ann. § 481.134 (Vernon Supp. 2001).
[3] Washington cites a note from the jury inquiring whether "life means no parole." In response, the trial court directed the jury to the parole charge. Washington does not contend the trial court's response to the jury's inquiry was erroneous, nor does he contend the jury engaged in misconduct. Those issues are therefore not before this Court.

Washington does contend the punishment assessed indicates the jury attempted to make him eligible for parole on the latest date possible. Even assuming, as Washington argues, that the jury's note reflects its misunderstanding regarding the consideration it was to give the parole laws, this purported misunderstanding would not make the statute unconstitutional. See Garrett v. State, 834 S.W.2d 605, 608 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd) (holding that a determination regarding whether a statute is misleading or contradictory should be judged by the content of the statute, not by a particular jury's reaction to the statute).