COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

MICHAEL CHRIS RHINEHARDT,                     )

                                                                              )               No.  08-01-00335-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
243rd District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )                
(TC# 2000D02566)

                                                                              )

 

 

O
P I N I O N

 

Appellant Michael
Chris Rhinehardt appeals his conviction for theft
over $200,000 and misapplication of fiduciary property over $200,000.  The jury found Appellant guilty and assessed
punishment for each count at 16 years=
imprisonment with a $10,000 fine on each count, the sentences to run
concurrently.  By eleven issues,
Appellant challenges the trial court=s
denial of his motion for new trial alleging jury misconduct, the parole law
instruction and the law of parties instruction in the
charge, and denial of his motion to have the State elect between the charged
offenses based on double jeopardy grounds. 
We affirm.

Appellant owned
and operated a number of companies that provided medical claims management
services.  Mekeli
Ieremia was the Director of Risk Management at the
Socorro Independent School District (ADistrict@) and was responsible for managing the
District=s 








self-funded
workers= compensation
fund.  Purchasing and finance officers at
the District relied on Mr. Ieremia=s assertions that certain types of
expenditures from the fund were necessary for the proper operation of the
District=s workers= compensation system.  Mr. Ieremia hired
Appellant=s
companies[1]
as service providers in his administration of the workers= compensation fund.  Under their arrangement, Mr. Ieremia sent lists of District employees to Appellant and
Appellant performed criminal background checks on the employees at a cost of
$3,500 for each background check.  Mr. Ieremia would then walk the invoices for these services
through the District=s
accounts-payable procedure.  At Mr. Ieremia=s
direction, District staff prepared purchase orders for background checks.  According to Neri
Gonzales, an accounts payable specialist for the District, Mr. Ieremia would bring purchase orders to her office and would
pick up the checks for the vendor when they were cut.  Thomas Ruiz, the director of purchasing for
the District, testified that he approved the invoices that Mr. Ieremia brought to him and that Mr. Ieremia represented to him that the price for the
background checks was reasonable and necessary.








A total of 4.6
million dollars was paid to Appellant=s
companies.  The State introduced evidence
to show that the background checks provided by Appellant were of no value to
the District.  The State also presented
evidence which indicated that Appellant gave Mr. Ieremia
a portion of this amount as a kickback. 
Superintendent Don Schulte and Assistant Superintendents Tommy Marcee and Ben DeBellis all
testified that they did not give approval for the background checks and that
these expenditures depleted the District=s
workers=
compensation fund.

At trial,
Appellant testified that he had an arrangement with the District in which he
expected to provide substantial medical claims management services once the
contracts for the District=s
current service vendors expired.  The
$3,500 per background check was a means of pre-funding that contract so that
Appellant could pay the $1.3 million referral fee to Scott Irot,
the broker who had obtained the District=s
business for him.  According to
Appellant, Mr. Irot wanted his referral fee up-front
and he was told by Mr. Ieremia and Mr. Irot to bill the District as he did in order to generate
the money for Mr. Irot.  Appellant testified that he believed District
officers had approved of this arrangement.

The jury found
Appellant guilty of theft of more than $200,000 and of misapplication of
fiduciary property in an amount exceeding $200,000 and assessed punishment at
sixteen years=
imprisonment and a $10,000 fine for each count. 
Appellant timely filed a motion for new trial and requested a hearing on
the motion.  The State filed a response
to the motion, asserting that no hearing was necessary.  No hearing was held and the motion for new
trial was overruled by operation of law. 
See Tex.R.App.P. 21.8.  Appellant now timely appeals his
conviction.

DISCUSSION

Motion
for New Trial

In Issues One
through Six, Appellant argues that the trial court erred in not setting a
hearing for Appellant=s
motion for new trial and in not granting his motion for new trial based on the
jury=s
consideration of parole law in sentencing, which violated the court=s parole instruction in the charge.

 








Standard
of Review

We review a trial
court=s denial
of a motion for new trial under the abuse of discretion standard.  Lewis v. State, 911
S.W.2d 1, 7 (Tex.Crim.App. 1995).  Abuse of discretion occurs when the trial
court=s
decision is arbitrary or unreasonable.  State v. Read, 965 S.W.2d 74, 77 (Tex.App.--Austin
1998, no pet.).  The trial court=s decision to deny the motion for new
trial will be sustained if it is correct on any theory of law applicable to the
case.  Id.

Affidavit
Evidence under Rule 606(b)








In Appellant=s motion for new trial, he asserted
that the jury violated the instructions in the parole charge by discussing and
considering the application of the parole law in its assessment of his
sentence.  Attached to Appellant=s motion were affidavits from juror
Glen Thomas Gattis and Appellant=s defense counsel, William Ravkind.  In Mr. Gattis=
affidavit, he stated that during punishment deliberations, there was a
disparity in opinion among the jurors about the proper sentence, which led to a
lengthy discussion in the jury room about how much of the sentence Appellant
would actually serve before being released. 
Mr. Gattis stated that during these
deliberations, the jury arrived at a consensus that Appellant would serve only
one year in prison for every four years of prison time assessed.  It was decided that if Appellant was assessed
a sentence of sixteen years imprisonment, he would be released on parole in
four or less years.  Mr. Gattis also stated that the sentence imposed was a
compromise verdict by the jury and that he would not have voted for a
sixteen-year sentence if he had not been firmly convinced by the deliberations
that it was a fact that Appellant would only serve 25 percent of the sentence
before release.  Appellant=s attorney, Mr. Ravkind,
stated in his affidavit that after the jury returned its verdict, he spoke to
the entire jury in the jury room and at that time several jurors told him that
they had engaged in an extensive and lengthy discussion of parole and how long
Appellant would actually be required to serve on any particular sentence they
assessed.

The State filed a
written response to Appellant=s
motion for new trial, asserting that the Gattis and Ravkind affidavits were not admissible on the issue of the
validity of the verdict in this case pursuant to Rules 606(b) and 802 of the
Texas Rules of Evidence and should not be considered by the court.  The State argued that Appellant=s motion failed to raise a matter upon
which Appellant could be entitled to relief because the motion was supported by
only inadmissible statements.  The trial
court did not conduct a hearing nor did it rule on the motion, therefore the
trial court overruled Appellant=s
motion for new trial by operation of law. 
See Tex.R.App.P. 21.8.

A trial court
abuses its discretion if it fails to hold a hearing on a motion for new trial
which are not determinable from the record.  King v. State, 29
S.W.3d 556, 569 (Tex.Crim.App. 2000); Reyes v.
State, 849 S.W.2d 812, 816 (Tex.Crim.App. 1993).  There is no requirement for a hearing,
however, if the motion for new trial and supporting affidavits are not adequate
to place the trial court on notice that reasonable grounds for a new trial may
exist.  Jordan v.
State, 883 S.W.2d 664, 665 (Tex.Crim.App. 1994).  Affidavit testimony to support the motion
states reasonable grounds only if the matter discussed in the affidavit would
be admissible in a subsequent hearing on the motion.  See Dunkins
v. State, 838 S.W.2d 898, 899 (Tex.App.--Texarkana
1992, pet. ref=d).  

Texas Rule of
Evidence 606(b), which governs admissibility of juror testimony, provides:








Upon an inquiry into the validity of a
verdict or indictment, a juror may not testify as to any matter or statement
occurring during the jury=s
deliberations, or to the effect of anything on any juror=s
mind or emotions or mental processes, as influencing any juror=s assent to or dissent from the verdict
or indictment.  Nor may a juror=s affidavit or any statement by a juror
concerning any matter about which the juror would be precluded from testifying
be admitted in evidence for any of these purposes.  However, a juror may testify:  (1) whether any outside influence was
improperly brought to bear upon any juror; or (2) to rebut a claim that the
juror was not qualified to serve.

 

Tex.R.Evid. 606(b).  Former Criminal Rule 606(b) permitted jurors
to testify to anything relevant to the validity of a verdict or
indictment.  See Buentello
v. State, 826 S.W.2d 610, 613-14 (Tex.Crim.App. 1992). 
Texas Rule of Evidence 606(b) narrowly limits a juror=s ability to testify to two exceptions:
whether any outside influence was improperly brought to bear upon a juror or to
rebut a claim that a juror was not qualified to serve.  See Hicks v. State,
15 S.W.3d 626, 630 (Tex.App.--Houston [14th Dist.]
2000, pet. ref=d); Sanders
v. State, 1 S.W.3d 885, 887 (Tex.App.--Austin
1999, no pet.).  AThe limitation on juror testimony in
post-trial proceedings is intended to encourage open discussion among jurors
during deliberations, to promote the finality of judgments, and to protect
jurors from harassment by unhappy litigants seeking grounds for a new trial.@ 
Sanders, 1 S.W.3d at 888.  We recognize that new Rule 606(b) emasculates
a defendant=s ability
to produce evidence as to matters occurring during the jury=s deliberations, including jury
misconduct.








Here, Appellant=s motion for new trial was supported by
affidavits which allege the jury discussed and considered the application of
parole law during its deliberations. 
Such evidence, however, is inadmissible unless it falls within one of
the Rule 606(b) exceptions.  See Tex.R.Evid. 606(b).  A juror=s
discussion as to the application of the parole law to the defendant=s sentence does not constitute an
outside influence.  Hines
v. State, 3 S.W.3d 618, 623 (Tex.App.--Texarkana
1999, pet. ref=d).  While Mr. Gattis= affidavit clearly shows that the
jurors discussed the effect of parole law in assessing Appellant=s sentence, these discussions occurred
during deliberations and emanated from inside the jury and therefore, the
affidavit was inadmissible.[2]  See id.; Hicks, 15 S.W.3d at 631. 
Accordingly, we must find that the trial court did not abuse its
discretion in not setting a hearing and not granting Appellant=s motion for new trial based on the Gattis affidavit evidence.

In his brief,
Appellant argues the Mr. Ravkind=s affidavit was admissible for purposes
of showing jury misconduct in this case because it falls within the statement
against interest hearsay exception.  Rule
803(24) provides that a hearsay statement is admissible if it tends to Amake the declarant
an object of hatred, ridicule, or disgrace@
such that a reasonable person in the declarant=s situation would not have made the
statement unless he or she believed it to be true.  See Tex.R.Evid. 803(24).  We note that Appellant did not raise his Rule
803(24) contention in his motion for new trial. 
Moreover, Appellant asks this Court to speculate as the jurors=
fear of civil and criminal liability for Aviolating@ the court=s
parole law instruction, based on the same evidence offered as proof of the
alleged jury misconduct.  Appellant cites
no authorities which support his hearsay exception
argument nor his contention that Rule 606(b) does not bar testimony from
sources other than the jurors, such that Mr. Ravind=s affidavit testimony would be
admissible to show jury misconduct.  We
find that the trial court did not abuse its discretion in not setting a hearing
for Appellant=s motion
for new trial based on the Ravkind affidavit
evidence.








Appellant also
argues that the trial court erred in not setting a hearing and not granting his
motion for new trial because Rule 606(b) conflicts with Texas Rule of Appellate
Procedure 21.3 and denies him the ability to prove jury misconduct in violation
of his rights to due process, to confrontation, and a fair and impartial jury
trial under the Texas and federal constitutions.[3]

Appellant argues
that Rule 606(b) cannot be used to prevent a defendant from providing a
violation of Rule 21.3(f) and (g) and that Rule 21.3 should control over the
general Rule 606(b).  Rule 21.3 provides
in pertinent part:

The defendant must be granted a new
trial for any of the following reasons:

 

.               .               .

 

(f)         when, after retiring to deliberate, the
jury has received other evidence; when a juror has talked with anyone about the
case; or when a juror became so intoxicated that his or her vote was probably
influenced as a result;

 

(g)        when the jury
has engaged in such misconduct that the defendant did not receive a fair and
impartial trial . . . .

 

Tex.R.App.P. 21.3








To allege jury misconduct,
Rule 606(b) requires that the juror=s
testimony or affidavit show the existence of an outside influence or that a
juror was not qualified to serve.  See
Tex.R.Evid. 606(b).  ARule
606(b) does not purport to redefine juror misconduct, nor does it alter the
grounds for obtaining a new trial in criminal cases.@  Hicks, 15 S.W.3d at
630; Sanders, 1 S.W.3d at 887. 
While we recognize that Rule 606(b) places a dramatic restriction on a
defendant=s ability
to prove jury misconduct, the defendant is not precluded from offering other
evidence, such as testimony of a nonjuror with
personal knowledge of the misconduct.  Hicks, 15 S.W.3d at 630; Sanders, 1 S.W.3d at 887.  Texas Rule of Evidence 606(b) restricts the
method by which a defendant may prove jury misconduct under Texas Rule of
Appellate Procedure 21.3, but does not preclude the use of other evidence that
falls within the rule=s
exceptions.  Hines, 3 S.W.3d at 621-22. 
Therefore, we disagree with Appellant=s
assertion that these rules necessarily conflict.








Appellant also
raises several constitutional challenges to Rule 606(b), arguing that his
rights to due process and a fair trial are superior to any restrictive reading
of Rule 606(b).  State and federal courts
have rejected Appellant=s
contention as to limitations on juror testimony to show jury misconduct.  See Tanner v. United States, 483 U.S.
107, 126-27, 107 S.Ct. 2739, 2750-51, 97 L.Ed.2d 90
(1987); Golden Eagle Archery, Inc. v. Jackson, 24 S.W.3d 362, 374 (Tex.
2000); Hines, 3 S.W.3d at 622-23; Sanders, 1 S.W.3d at 888; Soliz v. Saenz, 779 S.W.2d 929, 934 (Tex.App.--Corpus Christi 1989, writ denied).  In Golden Eagle Archery, Inc., the
Texas Supreme Court considered the constitutionality of Rule 327(b) of the
Texas Rules of Civil Evidence, which like Rule 606(b) of the Rules of Evidence,
restricts the admissibility of jury testimony. 
Golden Eagle Archery, Inc., 24 S.W.3d at 374.  The Court held that Rules 327(b) and 606(b)
do not deprive litigants of a fair trial under the Texas Constitution nor do
they fail to afford litigants due process. 
Id. at 375.  Rather, A[t]he
rules are designed to balance concerns about the threat of jury misconduct with
the threat from post-verdict juror investigation and impeachment of verdicts.@ 
Id.  The Court=s reasoning has been uniformly followed
by Texas appellate courts addressing the same issue in criminal cases.  See, e.g., Richardson v. State,
83 S.W.3d 332, 362 (Tex.App.--Corpus Christi 2002,
pet. ref=d)(Rule
606(b) as applied, did not constitute a violation of defendant=s right to a fair and impartial jury
trial under Texas and federal constitutions); Hicks, 15 S.W.3d at 631
(Rule 606(b) did not violate appellant=s
right to effective assistance of counsel and has been held constitutional under
both state and federal constitutions guaranteeing a fair and impartial jury); Hines,
3 S.W.3d at 622-23 (Rule 606(b) does not deny appellants their right to a fair
and impartial trial by jury); Sanders, 1 S.W.3d at 887-88 (rejecting
argument that Rule 606(b) denied appellant right to fair and impartial jury
trial).  Given our analysis above, we
must side with our sister courts that Rule 606(b) does not violate a defendant=s right to a fair and impartial trial
nor does it violate a defendant=s
due process rights.[4]  We overrule Appellant=s
Issues One through Three.  

In Issues Four
through Six, Appellant also argues that the trial court erred in not setting
and not granting his motion for new trial based on the jury=s violation of the court=s parole instruction.  Since the affidavit evidence attached to
Appellant=s motion
for new trial was inadmissible, Appellant was unable
to rebut the general presumption that the jury understood and followed the
court=s charge.  See Hutch v. State, 922
S.W.2d 166, 172 (Tex.Crim.App. 1996).  Therefore, we overrule Issues Four through
Six.








Parole
Charge

In Issues Seven
and Eight, Appellant argues that the trial court erred in overruling his
objection to the parole charge in violation of the Texas and federal
constitutions.  Prior to submission of
the court=s charge
to the jury, Appellant=s
counsel requested that the trial court strike the entire parole instruction
from its charge.  In his objections,
Appellant=s counsel
asserted that the parole instruction was self-contradictory in that it gives
the jury information about parole law and at the same time tells the jury not
to consider that information, which counsel argued violates due process.  Appellant=s
counsel also argued that the parole charge was unconstitutional as applied to
him because inmates are now serving longer sentences than when the statute was
enacted, while the parole instruction falsely implies that Appellant would be
released after serving less than one-fourth of whatever sentence the jury
imposed.








Article
37.07(4)(b) of the Texas Code of Criminal Procedure requires the trial court to
submit a parole instruction to the jury at the punishment stage of trial and
sets out the exact instruction to be submitted. 
See Tex.Code Crim.Proc.Ann.
art. 37.07(4)(b)(Vernon Supp.
2003).  At the punishment stage of
Appellant=s trial,
the trial court submitted to the jury the parole charge mandated by Article
37.07(4)(b) and tracked the exact language of the
statutory instruction.  The parole charge
is mandatory and the trial court has no discretion to avoid the statutory
requirement that it be submitted to the jury. 
See Luquis, 72 S.W.3d
at 361; Muhammad v. State, 830 S.W.2d 953, 956 (Tex.Crim.App.
1992); Washington v. State, 59 S.W.3d 260, 266 (Tex.App.--Texarkana
2001, pet. ref=d).  Moreover, various constitutional challenges
to the mandated parole charge have been rejected in Texas courts.  See, e.g., Luquis,
72 S.W.3d at 364 (parole instruction as sanctioned in Article 37.07(4)(a) does
not violate the due course of law provisions in Article I, section 19 of the
Texas Constitution nor the federal constitution=s
due process clause); Washington, 59 S.W.3d at 266-67 (mandatory charge
prescribed by Article 37.07, '
4(b) does not violate right to due process and due course of law under the
United States and Texas Constitutions); Hawkins v. State, 807 S.W.2d
874, 876 (Tex.App.--Beaumont 1991, pet. ref=d)(upholding the constitutionality of
Article 37.07(4)(b) charge).

In Luquis, the Court of Criminal Appeals analyzed the
constitutionality of Article 37.07(4)(a), starting
with the general presumption that the statute is constitutional and does not
violate a defendant=s due
process rights and noting that the defendant has the burden to establish that
the mandated parole charge is unconstitutional. 
Luquis, 72 S.W.3d at
365.  The Court stated that the
charge should be considered in context of the instructions as a whole and the
trial record.  Id.
at 366.  In reviewing the parole
instruction as a whole, the Court determined that the parole instruction
permits the jury to consider the existence of parole, but instructs the jury
that it may not consider how parole may be applied to the appellant.[5]  The Court assumed that the jury followed the
instructions as given and stated that it would not find constitutional error
unless it concluded that a reasonable jury probably was actually confused by
the charge.  Id.
at 366-67.  In that case, the
Court determined that the appellant had failed to demonstrate a reasonable
likelihood that the jury was, in fact, misled or that it assessed a higher
sentence based upon any misconstruction of the parole law charge.  Id. at 368.  








In his brief,
Appellant argues that unlike Luquis, Appellant
established in his affidavit evidence attached to the motion for new trial that
the jury did not follow the parole instructions in this case.  However, as we have discussed above, the Gattis affidavit evidence was inadmissible for purposes of
showing jury misconduct because it was juror testimony concerning matters
discussed during deliberations and did not fall within one of the Rule 606(b)
exceptions. See Brantley v. State, 48 S.W.3d 318, 329
(Tex.App.--Waco 2001, pet. ref=d).  The Ravkind
affidavit testimony was also not shown to be admissible evidence under a
hearsay exception.  Therefore, there is
no evidence in the record before this Court which shows that Appellant has met
his burden to demonstrate that the jury was confused or improperly applied the
parole laws in assessing his sentence. 
Appellant has failed to show that his due process rights were violated
by the trial court instructing the jury on the operation and effect of parole
law in the charge.  See Luquis, 72 S.W.3d at 368.  Accordingly, we overrule Issues Seven and
Eight.

Law
of Parties Charge

In Issue Nine,
Appellant contends that the trial court erred in overruling his objection to
the law of parties charge.  Prior to
submission of the charge to the jury, Appellant=s
counsel objected to the law of parties charge on grounds that if there is
sufficient evidence from which the jury could find Appellant guilty as a
primary actor, not as a party, then the parties charge should not be
given.  Appellant=s
counsel also argued that the evidence did not raise his liability as a
party.  The trial court overruled both
objections.  In the court=s charge to the jury, it was authorized
to convict Appellant only as a party with respect to the misapplication of
fiduciary property count and as a party or a primary actor with respect to the
theft count.[6]  








In McCuin, the Court of Criminal Appeals set forth the
test for determining when an instruction on the law of parties should be
submitted to the jury.  McCuin
v. State, 505 S.W.2d 827, 830 (Tex.Crim.App.
1974).  The Court stated:

Where the evidence
introduced upon the trial of the cause shows the active participation in the
offense by two or more persons, the trial court should first remove from
consideration the acts and conduct of the non-defendant actor.  Then, if the conduct of the defendant then on
trial would be sufficient, in and of itself, to sustain the conviction, no
submission of the law of [parties] is required.

 

.                .               .

 

On the other hand, if
the evidence introduced upon the trial of the cause shows, or raises an issue,
that the conduct of the defendant then upon trial is not sufficient, in and of
itself, to sustain a conviction, the State=s
case rests upon the law of [parties] and is dependent, at least in part, upon
the conduct of another.  In such a case,
the law of [parties] must be submitted and made applicable to the facts of the
case.

 

McCuin,
505 S.W.2d at 830; see also Goff v. State, 931 S.W.2d 537, 544 (Tex.Crim.App. 1996), cert. denied, 520 U.S. 1171,
117 S.Ct. 1438, 137 L.Ed.2d 545 (1997).  In determining whether the defendant acted as
a party to another=s
actions, the trial court may look to events occurring before, during,
and after the commission of the crime.  See
Goff, 931 S.W.2d at 545.

Misapplication
of Fiduciary Property Count








A person commits
the offense of misapplication if he intentionally, knowingly, or recklessly
misapplies property he holds as a fiduciary in a manner that involves
substantial risk of loss to the owner of the property.  See Tex.Pen.Code Ann. '
32.45(b)(Vernon 2003). 
The Penal Code defines Afiduciary@ to include any person acting in a
fiduciary capacity.  See Tex.Pen.Code Ann. '
32.45(a)(1)(C). 
AMisapply@ under the Code means to deal with
property contrary to an agreement under which the fiduciary holds the
property.  See Tex.Pen.Code Ann. ' 32.45(a)(2)(A).

In the present
case, the State=s
evidence showed that Mr. Ieremia, as Risk Manager for
the District, was responsible for administrating the District=s workers=
compensation fund.  The State showed that
Appellant=s
participation in the arrangement between him and Mr. Ieremia,
involved submitting bogus invoices for his companies=
services to the District which amounted to $4.6 million dollars.  The evidence clearly showed that Mr. Ieremia was the actor who had a fiduciary relationship with
the District, not Appellant.  If Mr. Ieremia=s
acts and conduct is removed from consideration, Appellant=s conduct is not sufficient by itself
to support conviction for misapplication of fiduciary property.  Therefore, Appellant fails to show that the
trial court erred in charging the jury on the law of parties with respect to
the misapplication of fiduciary property count.

Theft
Count

A person commits
the offense of theft if he unlawfully appropriates property with intent to
deprive the owner of that property.  See
Tex.Pen.Code Ann. '
31.03(a).  Appropriation is unlawful if
it is without the owner=s
effective consent.  See Tex.Pen.Code Ann. '
31.03(b)(1). 
Consent is not effective if it is induced by deception.  See Tex.Pen.Code Ann. '
31.01(3)(A).








In this case, the
State introduced evidence to show that Mr. Ieremia
was legally authorized to manage the District=s
workers=
compensation fund and deceived his supervisors and accounting personnel into
believing that the payments to Appellant were for proper and necessary
expenses.  To facilitate their arrangement
or scheme, Mr. Ieremia pushed Appellant=s invoices for worthless services
through the District=s
accounts-payable system.  If Mr. Ieremia=s
conduct is removed from consideration, the evidence is insufficient in itself
to show the deception perpetrated to prove lack of effective consent under the
theft statute.  The State=s theory of the case against Appellant
was dependent, at least in part, upon the conduct of Mr. Ieremia.  See McCuin, 505 S.W.2d at 830.  Therefore, the trial court did not err in
submitting to the jury the law of the parties charge with respect to the theft
count.  We overrule Issue Nine.  

Double
Jeopardy

In Issues Ten and
Eleven, Appellant asserts that the trial court erred in denying his motion for
the State to elect between offenses based on a violation of double jeopardy
under the Texas and federal constitutions.[7]  Specifically, Appellant argues that the trial
court erred in determining that the theft and misapplication offenses are
separate offenses for which the Legislature intended that there be separate
punishments.








The Double
Jeopardy Clause of the United States Constitution provides no person shall be Asubject for the same offense to be
twice put in jeopardy of life or limb . . . .@  U.S.
Const. amend. V.  When multiple offenses are prosecuted at a
single trial, the Double Jeopardy Clause Aprevent[s]
the sentencing court from prescribing greater punishment than the legislature
intended.@  Missouri v. Hunter,
459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535
(1983).  In Blockburger
v. United States, the Supreme Court held that where the same conduct
violates two distinct penal provisions, the test to determine whether the two
offenses are the same is whether each provision requires proof of a fact that
the other does not.  Blockburger
v. United States, 284 U.S. 299, 304, 52 S.Ct.
180, 182, 76 L.Ed. 306 (1932).  The Court
of Criminal Appeals in Ex parte Ervin
recognized, however, that the Blockburger test
cannot authorize two punishments where the Legislature clearly intended only
one.  Ex parte Ervin, 991 S.W.2d 804, 807 (Tex.Crim.App.
1999).  In the multiple offenses
context, the Blockburger test is simply a rule
of statutory construction, which is useful in ascertaining legislative
intent.  Id., citing
Hunter, 459 U.S. at 366-68, 103 S.Ct. at
678-79.  Absent a clear indication
to the contrary, it should be presumed that if the offenses are the same under
the Blockburger test, then the legislature did
not intend to authorize multiple punishments for both offenses.  Hunter, 459 U.S. at 366-68, 103 S.Ct. at 678-79.

Under the Blockburger test, the two offenses for which
Appellant was indicted each require a proof of fact that the other does
not.  The misapplication of fiduciary
property statute requires proof that the defendant was a fiduciary and that there
was an agreement under which the defendant held the property for the benefit of
another.  See Tex.Pen.Code Ann. '
32.45(a), (b).  The theft statute
requires proof that the defendant unlawfully appropriated the property with the
intent to deprive the owner of the property. 
See Tex.Pen.Code Ann. '
31.03(a).  Thus, each of the offenses for
which Appellant was tried and convicted had a unique element and are not the Asame
offense@ under
the Blockburger test.  However, we must still determine whether the
Legislature intended to treat the offenses as the same.  Ex parte Ervin,
991 S.W.2d at 814.  Relevant factors in
making this determination include: 








(1)        whether the
offenses are contained within the same statutory section;

 

(2)        whether the
offenses are phrased in the alternative;

 

(3)        whether the
offenses are named similarly;

 

(4)        whether the
offenses have common punishment ranges;

 

(5)        whether the
offenses have a common focus (that is, whether the gravamen
of the offenses is the same) and whether that common focus tends to indicate a
single instance of conduct;

 

(6)        whether the
elements that differ between the offenses can be considered the same under an
imputed theory of liability (that is, a liberalized Blockburger
standard utilizing imputed elements); and 

 

(7)        whether there
is legislative history containing an articulation of an intent to treat the
offenses as the same or different for double-jeopardy purposes.

 

Ex parte Ervin, 991 S.W.2d
at 814.

 








In reviewing this
case in light of the factors above, we find that the theft and misapplication
of fiduciary property offenses are not contained in the same statutory section, the offenses are not phrased in the alternative,
and are not similarly named.  The
offenses do not have a common focus in that only a person acting as a fiduciary
may commit misapplication of fiduciary property.  See Talamantez
v. State, 790 S.W.2d 33, 37 (Tex.App.--San
Antonio 1990, pet. ref=d).  Appellant argues that the different elements
of these offenses can be considered the same under the imputed theory of
liability, but fails to explain how or why this factor applies. Moreover, it is
not apparent to this Court how the differing elements of the offenses can be
considered the same under any imputed theory of liability, particularly given
that the misapplication statute only requires that the defendant Amisapply@
the property, rather than unlawfully Aappropriate@ the property with the intent to
deprive the owner of the property.  We do
not find nor does Appellant point to any legislative history which articulates
the legislature=s intent
to treat these offenses as the same or different for double jeopardy purposes.  See Ex parte
Ervin, 991 S.W.2d at 814.  The only factor in favor of Appellant=s contention is the common punishment
ranges of the offenses.  See Tex.Pen.Code Ann. '
31.03(e); Tex.Pen.Code Ann. ' 32.45(c).  We conclude that Appellant has failed to show
that the legislature intended for the two offenses to be treated the same for
double jeopardy purposes.  See Duvall
v. State, 59 S.W.3d 773, 777-78 (Tex.App.--Austin
2001, pet. ref=d)(defendant
failed to show that two different offenses should be considered the same where
the only Ervin factor applicable was similarity in degree and punishment
range of the offenses).  We overrule
Issues Ten and Eleven.  

Having overruled
all of Appellant=s issues
for review, we affirm the trial court=s
judgment.

 

 

July
17, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 5

McClure, J., Chew, J., and Preslar, C.J. (Ret.)

Preslar, C.J. (Ret.)(Sitting by Assignment)

 

(Do Not Publish)











[1]
Nila Newton, internal auditor for the Socorro
Independent School District, testified that in conducting an internal audit of
the District=s
expenses for its workers=
compensation fund, she found repetitive payments to several companies which she
later determined were all operated by Appellant and that all of these related
invoices were authorized by Mr. Ieremia.  





[2]
Appellant does not contend that Mr. Gattis= affidavit was admissible under the
second Rule 606(b) exception, i.e., to rebut a claim that the juror was not
qualified to serve.





[3]
Throughout Appellant=s
brief, he does not contend that his rights under the Texas and federal
constitutions differ, therefore we will treat his
constitutional protection claims together without distinction.  See Luquis v.
State, 72 S.W.3d 355, 364 (Tex.Crim.App.
2002).





[4]
Texas Rule of Appellate Procedure 21.3(g) provides that a defendant must be
granted a new trial Awhen
the jury has engaged in such misconduct that the defendant did not receive a
fair and impartial trial.@  To show reversible error, the defendant must
prove:  (1) a misstatement of the law;
(2) asserted as a fact; (3) by one professing to know the law; (4) which is
relied upon by other jurors; (5) who for that reason changed their vote to a
harsher punishment.  Sneed
v. State, 670 S.W.2d 262, 266 (Tex.Crim.App.
1984).  While the Texas Court of
Criminal Appeals has not directly addressed the constitutionality of Rule
606(b) to limit proof of jury misconduct, in Salazar, the Court did
remark in dicta that it would review the merits of a motion for new trial
alleging jury misconduct by discussion of parole laws during deliberations
under the five-prong Sneed test in that case because Aany potential 606(b) objection was
waived by both parties when they withdrew their initial objections.@ 
Salazar v. State, 38 S.W.3d 141, 148 n.3 (Tex.Crim.App.
2001), cert. denied, 534 U.S. 855, 122 S.Ct.
127, 151 L.Ed.2d 82 (2001).  The Court=s remarks suggest a proper Rule 606(b)
objection effectively limits a defendant=s
ability to prove jury misconduct without raising constitutionality concerns at
least on its face.





[5]
Appellant challenges the constitutionality of the same language that is
contained in Section 4(b) of Article 37.07, therefore the Court=s analysis of Section 4(a) is
applicable to our review of this issue. 





[6]
The court=s charge
on law of parties stated:

 

All persons are
parties to an offense who are guilty of acting together in the commission of an
offense.  A person is criminally
responsible as a party to an offense if the offense is committed by his own
conduct, by the conduct of another for which he is criminally responsible, or
by both.

 

A person is criminally
responsible for an offense committed by the conduct of another if, acting with
intent to promote or assist the commission of the offense he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the
offense.

 

Mere presence alone will not constitute one
a party to an offense.  





[7]
Both the United States and Texas Constitutions protect individuals from
multiple punishments for the same offense. 
See Phillips v. State, 787 S.W.2d 391, 393 n.2
(Tex.Crim.App. 1990).  Appellant does not argue that the double
jeopardy protections under the Texas and federal constitutions differ,
therefore we address only Appellant=s
federal claim.