In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00098-CR
______________________________


KENNETH BURKETT GIDDENS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 354th Judicial District Court
Hunt County, Texas
Trial Court No. 22,329


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            Depending on whose side one took, Kenneth Burkett Giddens was either a bad driver or a
bad neighbor. A Hunt County jury found the latter and convicted him of criminal mischief, with
pecuniary loss of at least $1,500.00, but less than $20,000.00, a state jail felony.


 See Tex. Pen.
Code Ann. § 28.03(a), (b)(4)(A) (Vernon Supp. 2005).
            Testimony indicated West Tawakoni resident Steve Hargrove purchased a piece of land
beside property owned and inhabited by Adella Jones, Giddens' daughter. Hargrove found that
Giddens and his family occasionally crossed Hargrove's property to access Jones' pasture behind
Jones' house.


 After finding litter and tire ruts on his property, Hargrove grew annoyed and erected
a fence and a mailbox on his property. Hargrove acknowledged he did not live on his property and
did not receive mail in this mailbox: these improvements were made to keep Giddens and his family
members from crossing Hargrove's property. 
            Hargrove testified that, on at least one prior occasion, Giddens had knocked down the
mailbox with his truck. Through cross-examination and Giddens' own testimony, Giddens presented
the defensive theory that he had knocked down the mailbox only one time before the date of the
offense, and that was accidental.


 On May 22, 2004, Giddens again ran over Hargrove's mailbox. 
Giddens and Hargrove exchanged words, and Giddens ran over Hargrove's 2003 Yamaha V Star
motorcycle, causing approximately $5,400.00 in damage. 
            On appeal, Giddens raises two points. He first asserts the trial court reversibly erred in
failing to sua sponte instruct the jury that it could consider evidence of prior bad acts only if it found
beyond a reasonable doubt that Giddens had committed such acts, and that the jury could consider
such evidence only for limited purposes. Giddens also claims his trial counsel was constitutionally
ineffective for failing to request such an instruction be included in the jury charge. We overrule both
points and affirm the trial court's judgment.
 
(1)       The Trial Court Did Not Reversibly Err in Failing to Sua Sponte Instruct the Jury
Concerning Extraneous Bad Acts

            Giddens complains the trial court erred in failing to instruct the jury that evidence of
extraneous bad acts or offenses can only be considered if the jury finds beyond a reasonable doubt
that the defendant committed them; and then, such conduct may be considered only for limited
purposes. See Tex. R. Evid. 105(a); Rankin v. State, 974 S.W.2d 707, 711–13 (Tex. Crim. App.
1996). Giddens made no objection to the trial court's charge regarding the issue of extraneous
offenses and did not request any kind of limiting instruction. As a result, to be reversible, any error
must have caused Giddens egregious harm. Hutch v. State, 922 S.W.2d 166, 170–71 (Tex. Crim.
App. 1996) (citing Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)).
            Giddens claims that the testimony he had previously knocked over Hargrove's mailbox and
removed part of the fence Hargrove erected, addressed extraneous offenses which required the trial
court to instruct the jury that it could consider such conduct only if it found beyond a reasonable
doubt that Giddens had done the acts, and that it could consider those acts only for certain limited
purposes.


 The State argues in its brief that prior attacks on Hargrove's improvements were same-transaction contextual evidence, and therefore did not require a limiting instruction. See Strickland
v. State, 784 S.W.2d 549, 551 (Tex. App.—Texarkana 1990, pet. ref'd).
            Did the other evidence


 provide same-transaction context? It seems a stretch to suggest that
other instances of Giddens damaging Hargrove's property approximately six months before the
charged conduct would give the trier of fact the necessary "information essential to understanding
the context and circumstances of events which, although legally separate offenses, are blended or
interwoven." Camacho v. State, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993) (citations omitted).


 
We note, however, that the evidence was clearly admissible to answer Giddens' defense of accident. 
See Booker v. State, 929 S.W.2d 57, 63 (Tex. App.—Beaumont 1996, pet. ref'd); Robinson v. State,
844 S.W.2d 925, 929 (Tex. App.—Houston [1st Dist.] 1992, no pet.).
            Assuming without deciding that an instruction was required, we examine the record for
egregious harm. In determining whether egregious harm occurred, we review the error in light of
the entire jury charge, the state of the evidence, including the contested issues and the weight of
probative evidence, the argument of counsel, and all other relevant evidence revealed by the record
as a whole. Skinner v. State, 956 S.W.2d 532, 544 (Tex. Crim. App. 1997) (quoting Almanza, 686
S.W.2d at 171). Errors resulting in egregious harm are those that affect the very basis of the case,
deprive the defendant of a valuable right, or vitally affect a defensive theory. Hutch v. State, 922
S.W.2d 166, 171 (Tex. Crim. App. 1996) (citing Almanza, 686 S.W.2d at 171); Washington v. State,
59 S.W.3d 260, 265 (Tex. App.—Texarkana 2001, pet. ref'd).
            The jury charge in this case adequately informed the jury of the applicable law, defined the
charged offense, and comported with the indictment. The evidence was undisputed that Giddens
caused damage to Hargrove's motorcycle.


 Giddens, in statements to the police and while testifying,
alternately  claimed  that  he  ran  over  the  motorcycle  when  (1)  his  foot  slipped  from  the brake,
and (2) his gear-shift indicator was not functioning properly, causing him to move forward over the
motorcycle when he thought he was in reverse. It is the jury's job to judge the credibility of the
witnesses and the weight to be given their testimony, and it may resolve or reconcile conflicts in the
testimony, accepting or rejecting such portions thereof as it sees fit. Banks v. State, 510 S.W.2d 592,
595 (Tex. Crim. App. 1974).
            Certainly, the State referenced Giddens' prior acts on Hargrove's property in closing
argument. The State referred to "numerous occasions" of Giddens running over Hargrove's property.
This reference was in the context of gleaning Giddens' intent to damage the motorcycle. Likewise,
when the State said that Giddens "kept running over Steve Hargrove's property" and that he
"terrorized his neighbor before, running over his stuff," such comments were made to infer Giddens'
intent on May 22, 2004, and to debunk his defense of accident.
            Egregious harm consists of errors affecting the very basis of the case, depriving the defendant
of a valuable right, vitally affecting a defensive theory, or making the case for conviction or
punishment clearly and significantly more persuasive. Saunders v. State, 817 S.W.2d 688, 692 (Tex.
Crim. App. 1991); Hall v. State, 937 S.W.2d 580, 583 (Tex. App.—Texarkana 1996, pet. ref'd). 
This is simply a case where the jury was asked to believe one side or the other on whether the
charged event was an accident. That the jury was not instructed, regarding whether and how it could
consider Giddens' prior encounters with Hargrove's fence and mailbox, did not vitally affect Giddens'
defense theory. Giddens testified that the other time he hit the mailbox was also accidental. We
cannot see how Giddens was deprived of a valuable right, or that the case for a conviction was made
clearly or significantly more persuasive because of a lack of instruction from the trial court. Giddens
admitted disconnecting a fence that Hargrove erected and tied into the fence on Giddens' daughter's
land, and leaving a note telling Hargrove that Giddens would do the same again, should Hargrove
attempt to rebuild the fence. Giddens, likewise, admitted accidentally backing over the mailbox on
one prior occasion. There being no contest that Giddens disconnected the fence or previously hit the
mailbox, the failure of the trial court to include the referenced instruction in the charge did not
deprive Giddens of a fair trial or undermine his defense. We overrule this point of error.
(2)       The Record Does Not Support a Finding that Giddens' Trial Counsel Was Ineffective
            Giddens complains, in his second point of error, that his trial attorney was constitutionally
ineffective for failing to request the jury instruction discussed above. We overrule this point of error.
            Ineffective assistance of counsel claims are evaluated under a two-part test, which requires
a showing of both deficient performance and resulting prejudice. Strickland v. Washington, 466 U.S.
668 (1984); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).
A Strickland claim must be "firmly founded in the record" and "the record must
affirmatively demonstrate" the meritorious nature of the claim. Direct appeal is
usually an inadequate vehicle for raising such a claim because the record is generally
undeveloped. This is true with regard to the question of deficient performance—in
which counsel's conduct is reviewed with great deference, without the distorting
effects of hindsight—where counsel's reasons for failing to do something do not
appear in the record. We have said that "trial counsel should ordinarily be afforded
an opportunity to explain his actions before being denounced as ineffective." Absent
such an opportunity, an appellate court should not find deficient performance unless
the challenged conduct was "so outrageous that no competent attorney would have
engaged in it."
Goodspeed v. State, No. PD-1882-03, 2005 Tex. Crim. App. LEXIS 520, at 4–5 (Tex. Crim. App.
Apr. 6, 2005) (citations omitted). When ineffective assistance is raised on direct appeal, appellate
counsel and the court must proceed on a trial record not developed with an eye on litigating or
preserving the claim—thus, a record which is often incomplete or inadequate for this purpose. 
Freeman v. State, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003). Some claims may be disposed of
on direct appeal where "trial counsel's ineffectiveness is so apparent from the record." Massaro v.
United States, 538 U.S. 500, 508 (2003); Freeman, 125 S.W.3d at 506.
            There is simply nothing in the record before us from which we can properly question the
strategy of Giddens' trial counsel. After reviewing the entire record, we conclude trial counsel
provided an active and spirited defense. As we have stated earlier, Giddens did not deny damaging
the motorcycle. His defense of accident was simply not believed by the jury. We do not find that
trial counsel's conduct was so outrageous that no competent attorney would have done the same. 
Accordingly, we overrule this point of error.
            We affirm the judgment of the trial court.

 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          January 31, 2006
Date Decided:             March 15, 2006

Do Not Publish



, 719 S.W.2d 205, 210 (Tex. Crim.
App. 1986). Here, the State did not link the pen packet to Martin by fingerprint evidence, but
attempted to use other evidence to connect Martin to the convictions shown in the pen packet. 
According to the pen packet, Martin was convicted for unauthorized use of a motor vehicle in 1995
and for burglary in 2002. Steve Bishop testified he had served as foreman of a jury which convicted
Martin of burglary in January 2002. Randy Sinclair, a probation officer with the Red River County
Probation Office, testified he had heard that Martin had been convicted of unauthorized use of a
motor vehicle in 1995. Sinclair testified, "Yes, I understand that it happened." However, Sinclair's
statement clearly indicates he did not have any personal knowledge of the conviction at issue. 
Martin also complains that his attorney was ineffective for failing to object to that statement. 
            Ineffective assistance of counsel claims must be based on the totality of the circumstances. 
Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). We find that Martin's trial
counsel's performance was deficient based on the totality of the circumstances. The combined
prejudicial effect of allowing the jury to be informed of the fact that Martin had a criminal record
and allowing witnesses to allege that Martin was a drug user and high on PCP when arrested renders
trial counsel's performance deficient. While trial counsel could have been relying on the strategy that
an objection would make it appear that the defense was trying to hide facts from the jury, the
prejudicial effect of this inadmissible evidence so greatly outweighs such strategic concerns that no
plausible professional reason exists not to object. Further, no plausible professional reason exists
for the failure to object to the pen packet, which was not shown by competent evidence to relate to
Martin. The combined effect of the errors did render trial counsel's performance deficient. 
            Even though Martin's trial counsel's performance was deficient, Martin has not shown that
there is a reasonable probability of a different result. The second prong of the ineffective assistance
of counsel test is whether the defendant's trial was prejudiced by his trial counsel's deficiency. Texas
law requires Martin to meet both prongs of Strickland. A defendant does not meet his or her burden
by merely showing that an error had some conceivable effect on the outcome of the trial. Strickland,
466 U.S. at 693. The defendant must show that the result of the proceeding was fundamentally
unfair or unreliable. Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993). The defendant must show
a "reasonable probability" that, but for the error, the result of the trial would have been different. 
Strickland, 466 U.S. at 693. "A reasonable probability is a probability sufficient to undermine
confidence in the outcome." Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Under
current Texas law, the Strickland standard applies at punishment as well. See Hernandez, 988
S.W.2d at 770. Martin, though, has not shown that there is a "reasonable probability" that the jury
would have found him not guilty. Based on the overwhelming evidence of the threat, there is not
a reasonable probability the jury would have found him not guilty. In this case, the offense is
threatening another based on that person's reporting of a crime. The essence of the offense is the
threat. Unlike the usual situation, where the jury must rely on witness testimony and resolve
conflicting evidence, here the jury was able to hear a tape recording of Martin making the threat. 
Martin has not shown that, in light of the tape recording and the other evidence, there is a reasonable
probability the jury would have reached a different result.
            Even though the pen packet may not have been properly admitted, Martin has not shown a
reasonable probability of a different outcome at sentencing. Martin was not charged with any
enhancements due to his prior criminal acts. Retaliation is a third degree felony, which subjected
Martin to not more than ten years' or less than two years' imprisonment. See Tex. Pen. Code Ann.
§ 12.34 (Vernon 2003), § 36.06(c) (Vernon Supp. 2004–2005). Martin was sentenced to six years'
imprisonment. A defendant does not meet his or her burden by merely showing that an error had
some conceivable effect on the outcome of the trial. Strickland, 466 U.S. at 693. Martin has not met
his burden of showing a reasonable probability of a different outcome. We overrule Martin's second
point of error.
2) Sufficiency of the Evidence
            Martin's sufficiency of the evidence arguments focus on two alleged variances between the
indictment and the proof at trial. Martin alleges that the evidence at trial is not sufficient to support
a finding that he threatened to murder Hines or that Hines was a witness. There is sufficient
evidence that Martin threatened to murder Hines, but there is a nonmaterial variance between the
indictment and the evidence concerning Hines' status as a witness. Based on the hypothetically
correct jury charge, there is sufficient evidence to support the verdict.
            The indictment alleges that Martin "did commit the offense of Retaliation by then and there
intentionally or knowingly threaten [sic] to harm another, to-wit: Jeff Hines, by an unlawful act,
to-wit: murder [sic] Jeff Hines, in retaliation for or on account of the status of Jeff Hines as a
witness." The jury charge tracked the indictment. Martin alleges there is insufficient evidence
because Hines was not a witness and the context of the conversation indicates that Martin intended
to "stomp" Hines, rather than murder Hines.
            In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000); Turner v. State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991). 
            When reviewing a challenge to the factual sufficiency of the evidence to support the
conviction, we are required to determine whether, considering all the evidence in a neutral light, the
jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, No. 539-02,
2004 Tex. Crim. App. LEXIS 668, at *20 (Tex. Crim. App. Apr. 21, 2004). There are two ways in
which we may find the evidence to be factually insufficient. First, if the evidence supporting the
verdict, considered alone, is too weak to support the jury's finding of guilt beyond a reasonable
doubt, then we must find the evidence insufficient. Id. Second, if—when we weigh the evidence
supporting and contravening the conviction—we conclude that the contrary evidence is strong
enough that the State could not have met its burden of proof, we must find the evidence insufficient. 
Id. "Stated another way, evidence supporting guilt can 'outweigh' the contrary proof and still be
factually insufficient under a beyond-a-reasonable-doubt standard." Id. If the evidence is factually
insufficient, then we must reverse the judgment and remand for a new trial. Clewis v. State, 922
S.W.2d 126, 135 (Tex. Crim. App. 1996).
            Martin contends there is insufficient evidence that he threatened to murder Hines. Martin
contends the context of the conversation indicates that he merely intended to "stomp" Hines, rather
than murder him. This argument fails because there is sufficient evidence that Martin threatened to
murder Hines. During the conversation with Cabler, Martin stated that he was going to "handle a
couple of business" and that "Jeff Hines is one of them." Later in the conversation Martin stated,
"I want to kill him, anyway," referring to Hines. Martin also told Cabler that he was "fixing to go
hunt a businessman" and requested directions to Hines' residence. Although Martin did state he was
"fixing to stomp [Hines's] [a--]," Cabler testified that a person could be killed by "stomping." A jury
may draw reasonable inferences based on the facts presented. Sterry v. State, 959 S.W.2d 249, 255
(Tex. App.—Dallas 1997, no pet.). Viewed in a light most favorable to the prosecution, a rational
juror could have found beyond a reasonable doubt that Martin threatened to kill Hines. Viewed in
a neutral light and after weighing the evidence supporting and contravening the conviction, a rational
juror could have found beyond a reasonable doubt that Martin threatened to kill Hines. Thus, there
is no variance between the indictment and the evidence at trial concerning whether Martin threatened
to murder Hines. Further, even if there was a variance, such a variance would be immaterial. See
Gollihar v. State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); Curry v. State, 30 S.W.3d 394, 404
(Tex. Crim. App. 2000); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 
            Martin argues there is insufficient evidence Hines was a witness as alleged in the indictment. 
Section 36.06 provides that:
A person commits an offense if he intentionally or knowingly harms or threatens to
harm another by an unlawful act:
(1) in retaliation for or on account of the service or status of another as a:
(A) public servant, witness, prospective witness, or informant; or
(B) person who has reported or who the actor knows intends to report
the occurrence of a crime; or
(2) to prevent or delay the service of another as a: 
(A) public servant, witness, prospective witness, or informant; or 
(B) person who has reported or who the actor knows intends to report
the occurrence of a crime.

Tex. Pen. Code Ann. § 36.06(a) (Vernon Supp. 2004–2005). While Hines implicated Martin in his
statement to the police, the State presented no evidence Hines had testified or had been called to
testify. The Texas Court of Criminal Appeals has defined "witness" as "one who has testified as
well as one who has been called to testify." Dooley v. State, 999 S.W.2d 796, 799 (Tex. App.—Tyler
1998, pet. ref'd); see Morrow v. State, 862 S.W.2d 612, 614 (Tex. Crim. App. 1993); Solomon v.
State, 830 S.W.2d 636, 637 (Tex. App.—Texarkana 1992, pet. ref'd). The Texas Court of Criminal
Appeals has recognized that "[w]hile there may be some overlap among the categories of persons
listed, each category is nevertheless distinct." Morrow, 862 S.W.2d at 614.
            The statute also applies to "prospective witnesses" and to a "person who has reported or who
the actor knows intends to report the occurrence of a crime." Tex. Pen. Code Ann. § 36.06(a). A
prospective witness is "a person who may testify in an official proceeding." Morrow, 862 S.W.2d
at 614; see Hudspeth v. State, 31 S.W.3d 409, 411 (Tex. App.—Amarillo 2000, pet. ref'd). The
evidence at trial established that Hines clearly reported the offense and that Hines was a prospective
witness. "A 'variance' occurs when there is a discrepancy between the allegations in the charging
instrument and the proof at trial." Gollihar, 46 S.W.3d at 246. Since Hines met the requirements
of the statute as either a person who reported the crime or as a prospective witness but was not a
witness, there is a variance between the indictment and the evidence at trial.
            We must now decide whether the variance which established that Hines was a prospective
witness rather than a witness renders the evidence insufficient. The Amarillo Court of Appeals has
examined this issue and found the evidence to be sufficient. Hudspeth, 31 S.W.3d at 411. In
Hudspeth, the evidence at trial established that the person threatened was a prospective witness
within the statute, but there was no evidence she had testified or been called to testify. Id. at 410–11. 
The court reasoned as follows:
In his third issue, appellant argues Mary was not a "witness" within the
meaning of section 36.06 because she had not yet testified at an official proceeding.
Section 36.06(a) not only protects witnesses but potential witnesses and those who
have reported the occurrence of a crime. Under the evidence presented at trial, at the
time appellant made the statements at issue, Mary was both a potential witness and
a person who had reported a crime. It is irrelevant that she had not yet testified. We
overrule appellant's third issue.
Id. at 411–12. We will follow our sister court's reasoning and find that this variance does not render
the evidence insufficient.
            The evidence is legally and factually sufficient. Officer Groves testified Hines had provided
him a statement regarding the string of burglaries. During the conversation, Martin informed Cabler
that Hines had given a statement to the police. Martin inquired, "What the [f---] does Jeff have on
you?" Martin discussed that other individuals had been talking to the police and that something
needed to be done. The jury could have reasonably concluded the threat resulted from Hines' act of
giving a statement to the police. Although Martin had stated he wanted to kill Hines anyway, the
jury could have concluded the threat was at least partially motivated by the reporting of the crime. 
Viewed in a light most favorable to the prosecution, a rational juror could have found all the
elements of retaliation beyond a reasonable doubt. Viewed in a neutral light and after weighing the
evidence supporting and contravening the conviction, a rational juror could have found all the
elements of retaliation beyond a reasonable doubt.
            Martin has not shown a reasonable probability of a different outcome due to his trial
attorney's deficient performance. The evidence is sufficient to support the jury's verdict. For the
reasons stated, we affirm the judgment of the trial court. 
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          July 1, 2004
Date Decided:             August 11, 2004

Do Not Publish