**Alan Ray ROGERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–01–00202–CR.

Court of Appeals of Texas,
Texarkana.

Submitted May 6, 2002.

Decided Oct. 8, 2002.

Ebb B. Mobley, Longview, for appellant.

William M. Jennings, Gregg County Dist. Atty., Longview, for appellee.

Before GRANT, ROSS, and CORNELIUS,* JJ.

## OPINION

Opinion by Justice CORNELIUS (Retired).

A jury convicted Alan Ray Rogers of aggravated assault and set his punishment, enhanced by a prior felony conviction, at sixty years' confinement.

Rogers used a firearm to shoot at his former girlfriend at close range while she sat in her car. In a previous trial, Rogers was convicted of aggravated assault and received a life sentence. On appeal of that conviction, we affirmed Rogers' conviction, but remanded the case for a new trial on punishment. *See Rogers v. State,* 38 S.W.3d 725 (Tex.App.-Texarkana 2001, pet. ref'd).

In the former appeal, we held that Rogers suffered egregious harm when the trial court failed to give the jury the charge required by Tex.Code Crim. Proc. Ann. art. 37.07, § 4 (Vernon Supp.2002), and then gave an incomplete response to the jury's question asking how much time Rogers would spend in prison if it assessed a life sentence. *Rogers v. State,* 38 S.W.3d at 729–30. After the second punishment hearing, a jury assessed Rogers' punishment at sixty years' imprisonment.

In this appeal, Rogers contends the trial court violated his right to due process of law by charging the jury about the effect of good conduct time on his eligibility for early release. He contends the

* William J. Cornelius, Chief Justice, Retired,  Sitting by Assignment

charge is misleading because good conduct time will not affect his eligibility for early release.

As it pertains to this issue, an inmate has two means of obtaining early release: parole and mandatory supervision. Because the judgment in this case contains an affirmative deadly weapon finding, Rogers is not eligible for parole until his actual calendar time served, without consideration of good conduct time, equals one-half of the maximum sentence or thirty calendar years, whichever is less. *See* Tex. Gov't Code Ann. § 508.145(d) (Vernon Supp.2002). Therefore, any good conduct time Rogers earns will not accelerate the date on which he is eligible for parole.

Release on mandatory supervision, when permitted by law, is generally allowed when the amount of calendar time an inmate serves plus the amount of good conduct time the inmate earns equals the sentence imposed. Tex. Gov't Code Ann. § 508.147(a) (Vernon 1998). However, Rogers is not eligible for early release under mandatory supervision procedures because the judgment contains an affirmative deadly weapon finding. *See* Tex. Gov't Code Ann. § 508.149(a)(1) (Vernon Supp. 2002). Therefore, good conduct time will not affect Rogers' eligibility for early release to mandatory supervision.

The jury was given a charge similar to the mandatory charge required by Article 37.07, § 4(a). The actual charge given to the jury reads as follows:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the sentence imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments and attempts at rehabilitation. If a prisoner engages in miscon-

duct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

The defendant will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

The charge required by Article 37.07, § 4(a) reads as follows:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be

imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

There are these differences between the statutorily prescribed version of the charge and the version given in this case: (1) In paragraph one of the statutory version, the charge uses the phrase "period of incarceration imposed," where in the charge given in this case, the words "sentence imposed" are used; (2) In paragraph three of the statutory charge, there is this language: "Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until...." Instead of this language, the charge in this case says simply, "The defendant will not become eligible for parole until...."; (3) The stat-

utory charge contains this language, which is omitted entirely from the charge in this case: "without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole."

We find that these differences in the charge given here are not significant or harmful and that the charge as given by the trial court substantially complies with Article 37.07, § 4(a). The difference set out in (1) above does not constitute an error. The phrases "period of incarceration imposed" and "sentence imposed" are substantially the same. We note that it is the period of incarceration or the sentence "imposed" that is mentioned in the charges, not that "served."

The language in (2) above that is omitted from the charge in this case is actually surplusage, and would have added nothing to the charge, because Rogers was not eligible to use good time credit for early release. Moreover, Rogers was not eligible for community supervision, so the jury was required to give him a term of imprisonment.

Likewise, the omitted language set out in (3) above was unnecessary in this case and would only have misled the jury, because Rogers could not use good conduct time for early release and it was impossible for him to receive punishment of less than four years. See TEX. PEN.CODE ANN. § 12.32 (Vernon 1994).

If it was error for the trial court to make these changes, and we think it was not, the error certainly did not harm Rogers. Moreover, Rogers does not complain of these differences between the required charge and the charge actually given in this case, but only that the charge given denied him due process.

Rogers' actual complaint on appeal is that the charge required by Article 37.07, § 4(a) denied him due process because he is not eligible for good conduct time. The same contention has been rejected by numerous courts, including this one. *See Luquis v. State,* 72 S.W.3d 355, 361 (Tex. Crim.App.2002); *Muhammad v. State,* 830 S.W.2d 953, 956 (Tex.Crim.App.1992); *Oakley v. State,* 830 S.W.2d 107, 111–12 (Tex.Crim.App.1992); *Bui v. State,* 68 S.W.3d 830, 841 (Tex.App–Houston [1st Dist.] 2002, no pet.); *Washington v. State,* 59 S.W.3d 260 (Tex.App.-Texarkana 2001, pet. ref'd); *Donoho v. State,* 39 S.W.3d 324, 331–32 (Tex.App.-Fort Worth 2001, pet. ref'd); *Espinosa v. State,* 29 S.W.3d 257, 261–62 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd); *Cagle v. State,* 23 S.W.3d 590, 594 (Tex.App.-Fort Worth 2000, pet. ref'd); *Edwards v. State,* 10 S.W.3d 699, 705 (Tex.App.-Houston [14th Dist.] 1999), *pet. dism'd, improvidently granted,* 67 S.W.3d 228 (Tex.Crim.App.2002) (per curiam).

■ Moreover, even if the jury improperly considered when Rogers would be eligible for parole in assessing his punishment, Rogers encouraged it to do so in his final argument:

> What kind of sentence? I don't know. The D.A. told you he wants life. [Rogers is] forty years old. The jury charge tells you he's going to have to serve— he's got to serve absolutely half of what he gets. Not that he gets out then, but he's got to serve half or thirty years at the most before he can even come up for parole. He's 40. What do you give him? Fifteen, twenty years? Twenty years, he'll be fifty before he comes up for parole.

Therefore, even if the jury did consider when Rogers would be eligible for parole in assessing his punishment, Rogers may not complain of an error he encouraged the jury to make.

The judgment is affirmed.

Concurring Opinion by Justice Ross.

Dissenting Opinion by Justice Grant.

DONALD R. ROSS, Justice, concurring.

I agree the charge the trial court gave the jury did not violate Rogers' right to due process of law. I cannot agree, however, that it was not error for the trial court to give a charge that deviated from the statutory charge or that the deviations between the actual jury charge and the statutory charge are immaterial. Therefore, I concur only in the judgment of this Court.

The wisdom of the statutory charge has been questioned in cases, such as this, in which good conduct time the defendant earns will not accelerate his or her eligibility for release on parole or affect his or her eligibility for release to mandatory supervision. *See, e.g., Luquis v. State,* 72 S.W.3d 355, 362 (Tex.Crim.App.2002) ("To those who are familiar with the Texas mandatory supervision law and its potential to lesson [sic] the actual amount of time an inmate spends in prison, this language *is* somewhat misleading."); *Gilmore v. State,* 68 S.W.3d 741, 743–44 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd) (Frost, J., concurring); *Jimenez v. State,* 992 S.W.2d 633, 637 (Tex.App.-Houston [1st Dist.] 1999), *aff'd on other grounds,* 32 S.W.3d 233 (Tex.Crim.App.2000), *overruled, Bui v. State,* 68 S.W.3d 830 (Tex. App.-Houston [1st Dist.] 2002, no pet. h.). There can be no doubt, however, that the Legislature intended the charge be given in such cases. As the Texas Court of Criminal Appeals commented recently:

> The Texas Legislature enacted legislation that *requires* the trial judge to instruct the jury in the precise wording

that the statute recites. Article 37.07, section 4(a) sets out, verbatim, the words that the trial judge is to use. There are even quotation marks around the wording of the instruction. That is at least some indication that the Legislature did not want any creative deviations from its chosen language. The Legislature prefaced its instruction language with directions that "the court *shall* charge the jury in writing as follows: ..." The use of the word "shall" generally indicates a mandatory duty. There is no reason to think that the Legislature enacted merely a suggested parole law jury instruction, one that trial judges should cut and paste as they see fit.

*Luquis,* 72 S.W.3d at 363.

In the first appeal by this same defendant, we reversed the judgment on punishment because the trial court failed to give the statutory charge and then gave an incomplete response when the jury asked for additional information. *See Rogers v. State,* 38 S.W.3d 725, 729–30 (Tex.App.-Texarkana 2001, pet. ref'd). The trial court in the present case again deviated from the statutory charge. This was error, even though Rogers never objected to the error at trial. As the Texas Court of Criminal Appeals commented in *Luquis,* "Trial judges may occasionally doubt the wisdom of a particular law, but they are not free to ignore explicit legislative directions unless those directives are clearly unconstitutional." *Luquis,* 72 S.W.3d at 363.

The question then is whether the jury charge is unconstitutional. The majority correctly notes that the constitutionality of the statutory charge has been upheld by numerous courts, including most recently the Texas Court of Criminal Appeals. *See id.* at 361. However, we are not faced in the present case with the charge contained in the statute; rather, we are faced with the charge as modified by the trial court.

The majority concludes the differences between the statutory charge and the charge as given are immaterial and, therefore, the charge as given is not unconstitutional. However, the differences between the statutory charge and the charge as given are significant and potentially misleading.

In the first paragraph of the charge, the jury is instructed the defendant may earn time off "the sentence imposed," rather than "the period of incarceration imposed" as provided in the first paragraph of the statutory charge. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (Vernon Supp. 2002). In the third paragraph, the jury is instructed that Rogers will not become eligible for parole until the actual time served equals one half of "the sentence imposed" or thirty years, whichever is less. However, the third paragraph omits the portion of the statutory charge informing the jury that Rogers will serve this time regardless of any good conduct time he might earn. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 4(a).

The instruction in the first paragraph tells the jury Rogers may earn time off "the sentence imposed." The instruction in the third paragraph tells the jury Rogers will not become eligible for parole until the actual time he serves equals the lesser of one half "the sentence imposed" or thirty years. Reading these paragraphs in conjunction, the jury could be misled into believing any good conduct time Rogers earns will reduce "the sentence imposed," making him eligible for parole sooner. By omitting the instruction in paragraph three that good conduct time will not operate to accelerate Rogers' eligibility for parole, the trial court failed to provide the instruction that could have corrected any misun-

derstanding caused by its previous instructions.

The majority dismisses the differences between the phrases "sentence imposed" and "period of incarceration imposed," concluding they are substantially the same and in no way related to the actual time served. It is not the differences between these phrases that is significant; rather, it is the fact the jury is told the "sentence imposed" may be reduced by the amount of good conduct time earned, but is not told Rogers must first serve one half his sentence or thirty years before good conduct time will affect his eligibility for parole. The fact that the trial court changed the phrase "period of incarceration imposed" to "sentence imposed" in the first paragraph, making it consistent with the phrase in the third paragraph, heightens the problem.

A reasonable jury could read this charge and conclude Rogers may become eligible for parole when he has served one half of the sentence the jury imposed less any good conduct time Rogers earned. This is not an accurate statement of the law governing Rogers' eligibility for parole. Therefore, the charge is potentially misleading.

I do not believe, however, that the charge, when read as a whole, violated Rogers' right to due process of law. In addressing a similar challenge to the charge contained in Article 37.07, § 4(a), the Texas Court of Criminal Appeals held the appellant had the burden of showing a reasonable likelihood that the jury was misled by the charge or that it assessed a higher sentence based on any misconstruction of the charge. *Luquis*, 72 S.W.3d at 367–68. This Rogers cannot do.

In *Luquis*, the court noted there was "no evidence or even a plausible argument that this jury connected 'good conduct time' with release on mandatory supervi-

sion, a legal concept about which the jury was told nothing." *Id.* at 362–63. Despite the differences between the charge given in the present case and the statutory charge given in *Luquis*, the same conclusion applies in the present case because here, as in *Luquis*, the jury was not informed about the existence of mandatory supervision.

As mentioned previously, the charge as given is misleading with respect to the possible impact of good conduct time on Rogers' eligibility for parole. Still, the jury was informed that Rogers "may" earn time off "the sentence imposed" through good conduct time, not that he necessarily would earn such time off. In addition, the jury was instructed not to consider the extent to which good conduct time may be awarded to or forfeited by Rogers and not to consider the manner in which the parole law might be applied to Rogers. Assuming the jury followed the instruction as a whole, it would not have based the punishment it assessed on the possibility that good conduct time might make Rogers eligible for parole sooner, as the language of the charge would mislead it to believe.

Rogers contends his sixty-year sentence is indicative of the jury's intent to make him eligible for parole as late as possible in an effort to mitigate the impact good conduct time would have on the length of his incarceration. However, there is no indication the sentence reflects a misunderstanding of the impact good conduct time will have on his sentence. In fact, Rogers' sentence arguably reflects the contrary proposition.

The jury was told Rogers would serve the lesser of one half of "the sentence imposed" or thirty years before he would be eligible for parole. One half of a sixty-year sentence is thirty years, meaning that, under the instruction the jury was

given, if Rogers earned any good conduct time, he would be eligible for parole before he served thirty years. If the jury were concerned that good conduct time would make Rogers eligible for parole earlier than thirty years, then it would have assessed a punishment that, even if it were reduced by good conduct time, would not have made Rogers eligible for parole before thirty years. For example, if the jury assessed a ninety-nine-year sentence, then Rogers would have to earn over thirty-nine years of good conduct time to have reduced "the sentence imposed" to a level half of which would be less than thirty years.

Arguably, the sentence reflects that the jury assessed a punishment calculated to make Rogers eligible for parole on the latest date possible without consideration of the amount of good conduct time he could earn. If that is the case, then the sentence would be improper insofar as it was based, not on the punishment Rogers deserved for his crime, but on the jury's desire to influence when Rogers would be eligible for parole.

For example, if the jury believed Rogers deserved a thirty-year sentence, but assessed a sixty-year sentence to ensure he served thirty years, then the sentence would be improper because Rogers could end up serving more time in jail than he deserved for his crime. In short, the sentence would reflect the jury's assumption that Rogers would receive parole once he was eligible, a consideration that, under either Article 37.07, § 4(a) or the instruction it was given, the jury was not entitled to make.

Rogers never makes this contention on appeal. Further, there is no indication in the record the jury considered anything other than the sentence Rogers deserved for his crime. To conclude otherwise would be to say the jury could not assess a punishment that would also make a defendant eligible for parole on the latest date possible under the law. I also agree with the majority that, if the jury did improperly consider when Rogers would be eligible for parole, Rogers encouraged the jury to make this error in his closing argument and should not be heard to complain on appeal.

For these reasons, I concur in the judgment of this Court.

BEN Z. GRANT, Justice, dissenting.

Years ago there was a hue and cry over the courts' failure to inform jurors about good conduct time and eligibility for parole. This absence of instruction created the danger of jurors speculating about these matters and possibly basing their verdicts on myths, rumors, and uninformed views. Thus, it was a proper endeavor for the Legislature to seek to require that the jurors be informed of the laws pertaining to good conduct and parole.

The instruction the Legislature produced to inform the jurors regarding cases such as this, Tex.Code Crim. Proc. Ann. art. 37.07, § 4(a) (Vernon Supp.2002), as it is written now, can only function to deceive, confuse, and invite erroneous conclusions. Although the defendant's conduct will be evaluated when the defendant becomes eligible for parole, the defendant is not entitled to good conduct time.

Although the instruction does not label the method of reduction involving good conduct time or "mandatory supervision," it implies a method distinct from parole, which is sufficient to make the instruction regarding such defendants substantively incorrect and misleading, regardless of how much the jurors know about the justice system. It is a disservice both to the defendant and the jurors involved to pro-

vide them with misleading information. This instruction is fundamentally unfair, denying the defendant due course of law in violation of Article I, § 19 of the Texas Constitution. The burden should not be on each defendant to meet the near-impossible task of proving that the jury was in fact misled by the instruction and that the defendant was actually harmed. The Legislature should amend the instruction to cure this defect.

The instruction actually given in this case is even less accurate than the statutory instruction in that it not only indicates a separate and distinct way good conduct time may decrease a defendant's period of incarceration, and it specifically states the defendant "may earn time off the sentence imposed through the award of good conduct time."

I disagree that statements made by Rogers's counsel in the closing arguments waives Rogers's complaint. A jury is more likely to, and should, be guided by the court's charge, not what a lawyer says in arguing his or her side of the case.

Because the charge and the statute are fundamentally unfair as applied to this type of case, I believe it violates the defendant's rights of constitutional due process. The Legislature should consider revising the instruction under Article 37.07, § 4(a) to eliminate or clarify in what way good conduct time may affect defendants who are not subject to the instruction now contained in the statute.

I would reverse the punishment portion of the case because the charge inaccurately tells the jury that the defendant in this case can earn time off the sentence imposed and thus violates the defendant's right of constitutional due process.