

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00055-CR

_____

BENJAMIN CHASE CAPPS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 39504-A

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

## MEMORANDUM OPINION

Benjamin Chase Capps was convicted by a jury of driving while intoxicated (DWI), third or more, a third degree felony. His punishment was enhanced by his plea of true to a prior conviction; Capps received a sentence of twenty years' imprisonment. On appeal, Capps challenges the trial court's jurisdiction and argues that the trial court erred in (1) failing to omit jury instructions over objections that they constituted a comment on the weight of the evidence, (2) allowing testimony from a non-expert witness about intoxication, (3) allowing extraneous-offense evidence at the punishment stage, (4) allowing the use of a PowerPoint presentation during the State's closing argument, and (5) failing to grant Capps' request to omit parole and good time instructions in the punishment charge. We affirm the trial court's judgment because we find that the trial court was within its jurisdiction and committed no error with respect to Capps' complaints.

## I.      Trial Court's Jurisdiction

The offense of DWI is a class B misdemeanor. *See* TEX. PENAL CODE ANN. § 49.04(b) (West Supp. 2012). However, this offense becomes "a felony of the third degree if it is shown on the trial of the offense that the person has previously been convicted: . . . two times of any other offense relating to the operating of a motor vehicle while intoxicated." TEX. PENAL CODE ANN. § 49.09(b)(2) (West Supp. 2012). The State's indictment alleged that Capps was previously convicted of DWI "on the 14th day of March, 2001, in cause number 2000-5038 in the County Court of Gregg County, Texas" and "on the 5th day of July, 2001, in cause number 26761 in the County Court of Upshur County, Texas." The State's allegations of these predicate

offenses vested the district court with jurisdiction over this third degree offense. *See Martin v. State*, 200 S.W.3d 635, 640 (Tex. Crim. App. 2006); *Gibson v. State*, 995 S.W.2d 693, 696 (Tex. Crim. App. 1999).

At trial, the State introduced a stipulation of evidence and judicial confession signed by Capps, which admitted the convictions of the predicate offenses. The stipulation of evidence was received without objection. In his briefing, Capps appears to argue that the stipulation was "awkward," and unclear. We disagree. The stipulation read:

> I, BENJAMIN CHASE CAPPS . . . judicially confess to the following facts and agree and stipulate that these facts are true and correct: that on or about the 31st day of August, 2009 in Gregg County, Texas, I, BENJAMIN CHASE CAPPS did then and there prior to being charged with the aforesaid offense, on the 14th day of March, 2011, in cause number 2000-5038 in the County Court of Gregg County, Texas, I was convicted of an offense relating to the operating of a motor vehicle while intoxicated; and on the 5th day of July, 2001, in cause number 26761 in the County Court of Upshur County, Texas, I was convicted of an offense relating to the operating of a motor vehicle while intoxicated, as charged in the indictment.

This stipulation and judicial confession had the effect of withdrawing the fact of two prior convictions from issue and dispensed with the need to prove them. *Bryant v. State*, 187 S.W.3d 397, 400 (Tex. Crim. App. 2005) (stipulation to two prior DWI convictions removes need to prove those convictions); *see generally Tamez v. State*, 11 S.W.3d 198 (Tex. Crim. App. 2000).[1]

---

[1]Capps also references, but does not develop, an argument relating to double jeopardy which was not asserted in the trial court below.

## II.     Jury Instruction Directing a Finding of the Prior Jurisdictional Offenses

Our review of error in this jury charge involves a two-step process.  *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see also Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009).  Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal.  *Abdnor*, 871 S.W.2d at 731–32.

A trial court must submit a charge setting forth the "law applicable to the case."  TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007).  "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application to the case." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007).

During guilt/innocence, the trial court submitted this instruction to the jury:

THE DEFENDANT STIPULATED THAT HE HAS BEEN PREVIOUSLY CONVICTED TWO TIMES OF DRIVING WHILE INTOXICATED. BECAUSE THIS ELEMENT IS UNCONTESTED, NO OTHER EVIDENCE REGARDING THE PRIOR CONVICTIONS IS NECESSARY.  YOU ARE HEREBY DIRECTED TO FIND THIS ELEMENT IS NOW PROVEN.  THESE PRIOR CONVICTIONS MAY NOT BE USED FOR ANY OTHER PURPOSE IN DETERMINING THE GUILT OR INNOCENCE OF THE DEFENDANT ON THIS CHARGE.

At the charge conference, Capps objected to this language as a comment on the weight of the evidence, but noted that there was no "expectation to argue against the stipulation."  Counsel clarified, "I have no problem with stating to the jury the defendant stipulated. . . . I just think the next sentence is actually a comment on the weight of that evidence, and that is strictly within the province of the jury."  After consulting *Martin v. State*, 200 S.W.3d 635 (Tex. Crim. App. 2006),

4

and the "Texas Criminal Pattern Jury Charges on intoxication and controlled substances, Section A4.17," the objection was overruled.

In *Martin*, the Texas Court of Criminal Appeals directed that the jury charge "include some reference to the jurisdictional element of two prior DWI convictions in a felony DWI trial" and that it also include "some reference to the defendant's stipulation and its legal effect of establishing the jurisdictional element." *Id.* at 641. It wrote that one manner of accomplishing this task could be:

> to simply charge the elements of the underlying DWI offense and include a paragraph stating that the defendant has stipulated to the existence of two (specified or unspecified) prior DWI convictions, and thus the jury is directed to find that those elements of felony DWI are established.

*Id.* at 639. That is precisely what the trial court did in this case. Capps attempts to distinguish *Martin* by stating that while the case "speaks of 'prior convictions' and stipulation thereto by a defendant . . . [as] 'established,'" the case "never sanctions the use of a word like 'proven,' which carries with it the especial [sic] connotation of a burden on proof and acceptability of evidence, i.e. the weight of evidence."

We do not find any significant difference between the term proven and the term established. The trial court acted in accordance with *Martin*. Finding no error in the submission of this jury instruction, we overrule Capps' point of error.

5

## III. Arresting Officer Testimony

After the arresting officer, Jeremy Higginbotham, testified that he noticed Capps' glassy, red eyes, slurred speech, loss of fine motor skills, and slowed movement,[2] Capps asked the court to take Higginbotham on voir dire outside of the presence of the jury. During voir dire, it was established that Higginbotham was not an ophthalmologist or optometrist. After voir dire, Capps lodged the following objection and argument:

> I believe that the officer should be prevented from testifying with regards to the results of an HGN exercise. I don't think that he can—that he's qualified to tell us what the causes of a particular eye movement is. And I think that only an ophthalmologist should be permitted to interpret the particular eye movement as indicative of intoxication.

The objection was overruled, and Higginbotham testified that he observed six out of six clues on the horizontal gaze nystamus (HGN) test, which indicated intoxication.

Capps argues that the trial court erred in allowing Higginbotham to testify about the HGN test without "any offer made by the State to supply a scientific basis . . . for those opinions."[3]

In *Emerson v. State*, it was argued that "the HGN test is a 'scientific' test, similar to a breathalyzer test, and that the HGN test results should not have been admitted because [the arresting officer] was not qualified as a scientific expert." *Emerson v. State*, 880 S.W.2d 759, 762 (Tex. Crim. App. 1994). This exact argument is made here. Rejecting this argument, the Texas Court of Criminal Appeals espoused upon the scientific reliability of the HGN test and took judicial notice "of the reliability of both the theory underlying the HGN and its technique."

---

[2]Capps told Higginbotham that he had ingested both Vicodin and Suboxone.

[3]Although Capps' brief complains that the court allowed Higginbotham to testify about other field-sobriety tests, he lodged no objection at trial with respect to tests other than the HGN test.

*Id.* at 768–69. Thus, pursuant to *Emerson*, only the following requirements are needed in order for an officer to testify about the results of an HGN test:

> For testimony concerning a defendant's performance on the HGN test to be admissible, it must be shown that the witness testifying is qualified as an expert on the HGN test, specifically concerning its administration and technique. In the case of a police officer or other law enforcement official, this requirement will be satisfied by proof that the officer has received practitioner certification by the State of Texas to administer the HGN. A witness qualified as an expert on the administration and technique of the HGN test may testify concerning a defendant's performance on the HGN test . . . .

*Id.* at 769.

Capps acknowledges that *Emerson* stands "for the proposition that HGN evidence [is] admissible even without the ability of the policeman to qualify as an expert in the science underlying the test." Yet, Capps cites *United States v. Horn*, 185 F. Supp. 2d 530, 561 (D. Md. 2002), a case which does not control in Texas courts, to support his claim that *Emerson* "has been questioned by at least one court." Unquestionably, however, *Emerson* has been cited with favor in many Texas courts, including this one. *Hartman v. State*, 198 S.W.3d 829, 839 (Tex. App.—Corpus Christi 2006, pet. struck); *McRae v. State*, 152 S.W.3d 739, 743 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (disapproving *Horn*); *Compton v. State*, 120 S.W.3d 375, 377 (Tex. App.—Texarkana 2003, pet. ref'd)[4]; *Quinney v. State*, 99 S.W.3d 853, 857 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Ellis v. State*, 86 S.W.3d 759, 760 (Tex. App.—Waco 2002, pet. ref'd); *see State v. Fecci*, 9 S.W.3d 212, 217–18 (Tex. App.—San Antonio 1999, no pet.).

---

[4]*See also Tidwell v. State*, No. 06-06-00143-CR, 2007 WL 1342460, at *4 (Tex. App.—Texarkana May 9, 2007, no pet.) (mem. op., not designated for publication).

Here, Higginbotham testified that he was trained on how to administer standard field-sobriety tests in accordance with National Highway Traffic Safety Administration (NHTSA) guidelines. He further testified he had taken a DWI course "[a]t the academy" in which he became "certified to perform the SFSTs," and had taken a second course focusing specifically on HGN testing and administration. Thus, in accordance with *Emerson*, Capps was "qualified as an expert on the HGN test, specifically concerning its administration and technique[.]" *Emerson*, 880 S.W.2d at 769. Thus, his testimony was admissible. *Id.*

We overrule Capps' third point of error.

## IV.     Punishment Phase Evidence of a Prior Accident Caused by Intoxication

During the punishment phase, several witnesses, including Capps, testified that the driver of another vehicle was killed in an accident caused when Capps "shot over into incoming traffic" on February 6, 2010. A test of a sample of Capps' blood, taken on the day of the accident, revealed the presence of Meprobamate (a muscle relaxer), Phenobarbital, Alaprazolam (Xanax), and Hydrocodone. Capps' brief states, "[T]hroughout the punishment phase of the trial, Appellant voiced his objection to the State's use of evidence of a car wreck – and the circumstances of it – on February 6, 2010, clearly encompassing several extraneous offenses."

Our review of the record reveals that counsel employed a running objection only as to "any and all unadjudicated offenses." The testimony from several witnesses regarding the car accident at issue then continued without further objection. Counsel also complains of the introduction of "extraneous offenses . . . [that] were yet unadjudicated, unconvicted, offenses of possession of various controlled substances, intoxication manslaughter, and intoxication

8

assault."[5]   Again, the only objection made was a general objection to the introduction of any unadjudicated offenses.

> Article 37.07 of the Texas Code of Criminal Procedure provides:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2012).  At trial, counsel lodged no Rule 404 or 405 objections.  Here, he argues for the first time that Rule 403 applies, claiming that "[a]t best, the State's evidence amounted to 'some evidence' that drugs were present, but certainly not proof of their quantities by weight or their penalty groups as must be proven beyond a reasonable doubt for conviction."

We find that the trial court properly overruled Capps' sole objection related to "unadjudicated offenses" and that the evidence introduced by the State which did not consist of judgments of convictions was permitted under Article 37.07, Section 3(a)(1) as extraneous bad acts.  Because they were bad acts, the State was only required to show that the acts were

---

[5]The record reveals that counsel specifically stated that he had no objection to the State's introduction of convictions for possession of marihuana, theft, burglary of a vehicle, providing a false report to a peace officer, two assaults causing bodily injury, and several DWIs.

9

committed by Capps beyond a reasonable doubt,[6] not that the acts rose to the level of a crime. *Haley v. State*, 173 S.W.3d 510, 514 (Tex. Crim. App. 2005) (not necessary to prove that bad act was criminal act or that defendant committed crime). Finally, because no Rule 403 arguments were raised below, they were unpreserved. *See* TEX. R. APP. P. 33.1; *Montgomery v. State*, 810 S.W.2d 372, 388 (Tex. Crim. App. 1991) (op. on reh'g).

We overrule Capps' point of error related to evidence introduced at punishment.

## V. The State's Use of PowerPoint

Capps does not complain generally that the PowerPoint presentation should have been disallowed. He objects to a slide which listed "aggravated assault/manslaughter" as a bad act committed by Capps. At trial, the following discussion occurred:

> [Defense Attorney]: Your Honor, I think that the -- as long as I believe it does -- there is one entry, that very last one, aggravated assault/manslaughter, I think it misleads, in other words, criminal history means something that has already occurred, it's in the past. That aggravated assault/manslaughter action is still unadjudicated and it's something we still need to get a court's decision on.
>
> . . . .
>
> [State's Attorney]: What we're talking about is the 2/6/2010, I believe, is where the objection is. We've used the offense dates for each case in this Powerpoint [sic] until the last one, the 2/6/2010 is the date of the offense date. We don't have "conviction" written by it. The date of the offense was given.
>
> [Defense Attorney]: Your Honor, cognitively it's all fine if we're looking at the date. But if this was the image of all dates, I certainly don't have an issue with it. But what we have is criminal history. We know that history is that he's committed some offenses. He's had court opinion on those offenses. He has not a court opinion on what we have highlighted in red. So what we're asking the

---

[6]Capps' brief does not allege that he did not commit the various bad acts which were introduced by the State. The jury charge instructed that "extraneous crimes or bad acts" were admitted solely for determining the proper punishment. The jury was further instructed that such evidence could not be considered unless the jury found beyond a reasonable doubt that Capps committed such acts.

jury to do is -- you know, we're telling them that that's something that they need to go ahead and put into his history although we don't have a court decision on that. That's not right, Judge. That's something that we will probably never agree to.

THE COURT: Well, as I understand that's the allegation of the unadjudicated offense that the State has put on testimony during punishment phase.

[Defense Attorney]: Yes, it is. If it's clear and it doesn't mislead the jury into thinking that that was part of his history, because the presumption of innocence is still with this case -- with this man. And here we've taken it away. We're saying that the presumption of innocence is part of his history. And, Your Honor --

THE COURT: Well, I'm going to direct the State can use this as demonstrative evidence but you need to make it clear that this is not -- this is the offense in the punishment phase that you put on evidence and it's not one that he's been adjudicated guilty in a court of law.

. . . .

THE COURT: No. We're in punishment phase where Texas law allows the State to attempt to prove up extraneous. And you can argue if they fail to do so beyond a reasonable doubt; they're going to argue that they have. So I note your objection and I overrule it.

In this point of error, Capps reurges his complaint regarding admission of testimony related to the extraneous accident, as well as unpreserved arguments related to Rule 403. We have already explained above that the trial court did not err in admitting evidence related to the accident, which constituted a bad act. No further analysis is provided as to why the trial court erred in allowing the State to use the PowerPoint as a demonstrative aid during closing argument.

Capps attempts to argue that the objection to the PowerPoint "was an objection to jury argument. . . . " From that premise, Capps presents a lengthy argument on the propriety of a State's jury summation; the missing link is any objection to the argument. We do not interpret

11

the objection to a portion of the PowerPoint presentation as an objection to the State's argument to the jury. Without proper objection, no jury argument issue is preserved.

This point of error is overruled.

## VI. Parole and Good Time Instruction Was Mandatory

Section 4(c) of Article 37.07 of the Texas Code of Criminal Procedure requires the trial court to inform the jury of the existence and mechanics of parole law and good conduct time. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(c) (West Supp. 2012). The instruction Capps sought to omit was required "[i]n the penalty phase of the trial of a felony case in which the punishment is to be assessed by the jury rather than the court, if the offense is punishable as a felony of the second or third degree." *Id.* As we have stated before, this instruction is considered mandatory. *Villarreal v. State*, 205 S.W.3d 103, 105 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed); *Rogers v. State*, 87 S.W.3d 779, 781 (Tex. App.—Texarkana 2002, pet. ref'd). [7]

We overrule Capps' last point of error.

---

[7]Once again, appellate counsel attempts to convert a trial objection into an argument that was not mentioned at trial. Counsel posits that the objection to the mandatory jury instruction effectively asserted a violation of federal and state due process rights and then presents a due process argument. Again, no objection was made at trial to preserve this issue. Further, the Texas Court of Criminal Appeals has held this mandatory instruction does not violate due process rights. *Luquis v. State*, 72 S.W.3d 355, 365 (Tex. Crim. App. 2002).

## VII.    Conclusion

We affirm the trial court's judgment.


Jack Carter
Justice


Date Submitted:    March 5, 2013
Date Decided:     March 15, 2013

Do Not Publish