

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-12-00129-CR

DAVID WAYNE HUGHES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 27081

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

After David Wayne Hughes signed a written consent for Hunt County officers to search his residence, evidence suggests that, in the ensuing search, officers found in the residence an illegally-short-barreled shotgun. From his jury-trial conviction for possessing a prohibited weapon and his sentence of eight years' confinement, Hughes urges on appeal that the weapon should not have been admitted into evidence, that the evidence was legally insufficient to support his conviction, and that an improper charge was given to the jury on the subject of parole. We affirm the trial court's judgment because (1) Hughes consented to the search, (2) legally sufficient evidence supports the judgment, and (3) the required jury instruction was given.

*(1)*    *Hughes Consented to the Search*

Narcotics investigator David Ryan Wilson had identified several houses as potential harbors for drug-related activity based on information gathered "over [his] experience with the sheriff's office." As a result, the Hunt County Sheriff's Department conducted knock-and-talk visits at these houses. Wilson explained that, in a knock-and-talk visit, "we simply approach the residence, knock on the door, make contact with the homeowner or the person in question if they're home. Tell them exactly what we're doing in the neighborhood and why we're there and ask them for consent to search a residence." The purpose of the initiative was to "[c]ut down on drug trafficking, which cuts down on burglaries and thefts." As part of the process, Wilson visited Hughes' home, where he believed "suspicious activity [was] going on."

Wilson approached the home and made contact with Hughes through the open front door. Wilson testified, "We asked for consent to step in his residence and talk to him. He gave us

2

consent. We stepped inside." Wilson noticed that "the condition of the house was horrendous," and that there were "roaches crawling in places with the lights on." Three young children were present in the kitchen where "there was food and pans all clustered . . . like they'd been cooking for weeks on end without cleaning dishes." Concerned for the children's health and safety, Wilson asked, and was given permission to inspect their rooms. After Wilson "observed just filth," including "roaches crawling in the cribs," he determined that he needed to contact Child Protective Services.

Wilson then asked to search the only other bedroom in the home, which Hughes identified as his room. After obtaining oral consent, Wilson secured Hughes' written consent to search the residence. Fellow Deputy David Arndt testified that Wilson "explained the consent form to [Hughes], he agreed and signed it." After the form was signed, Arndt entered Hughes' room and seized several items, including a "short-barrel shotgun" from the room.[1] The shotgun was identified as a "Mossberg Maverick Model 88 12 gauge pump action shotgun."

Hughes filed a motion to suppress the shotgun and objected to its admission as evidence and to related testimony on the ground that his consent to the search was involuntary. At the hearing on his motion to suppress, Hughes testified that he did not give the officers oral consent and that the written consent form was not filled out until after his arrest. The trial court overruled Hughes' motion to suppress.

---

[1]We understand from our previous opinion in *Hughes v. State*, that marihuana and drug paraphernalia were found in Hughes' room as a result of this search. No. 06-12-00027-CR, 2012 WL 4882666 (Tex. App.—Texarkana Oct. 16, 2012, no pet.) (mem. op., not designated for publication). This evidence was not presented to the jury in this trial for possession of a prohibited weapon.

We review a trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review. *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd); *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd). While we defer to the trial court on its determination of historical facts and credibility, we review de novo its application of the law and determination on questions not turning on credibility. *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Graves*, 307 S.W.3d at 489. We also afford deference to a trial court's "application of law to fact questions," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 985 S.W.2d at 89.

Consent is an exception to the Fourth Amendment's warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Montanez v. State*, 195 S.W.3d 101, 105 (Tex. Crim. App. 2006); *Cisneros v. State*, 165 S.W.3d 853, 856 (Tex. App.—Texarkana 2005, no pet.). "Consent must be voluntary to be effective, and if that consent is the result of coercion, the consent is involuntarily obtained." *Hart v. State*, 173 S.W.3d 131, 147 (Tex. App.—Texarkana 2005, no pet.). In determining whether consent is voluntary, we look to certain relevant factors, such as: "the youth of the accused; the education of the accused; the intelligence of the accused; the constitutional advice given to the accused; the length of the detention; the repetitiveness of the questioning; and the use of physical punishment." *Id.* (citing *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000)). "Additionally, testimony by law enforcement officers that no

4

coercion was involved in obtaining the consent is evidence of the consent's voluntary nature." *Id.* (citing *Martinez v. State*, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000)).

Hughes characterizes his consent as "a surrender to an irresistible display of police authority." The trial court disagreed. Hughes was not in custody, was of adult age, had "finished the eighth grade," obtained his GED, and testified that he could read and write English. There was no evidence suggesting that the length of detention was long, that questioning was repetitive, or that physical punishment was used. Both Wilson and Arndt's testimony indicated that no coercion was used. The "residence consent to search form" contained Hughes' permission to search, his signature, and this acknowledgement, "I further state that no threats, force or mental coercion of any kind have been used against me to get me to consent to the search described above or to sign this form."

Wilson testified that he did not specifically explain the right to refuse consent because "I mean, everybody knows their rights."[2] Hughes claims that he did not know of his right to refuse consent. "A police officer's failure to inform the accused that he or she may refuse consent is a factor to consider in determining the voluntariness of consent; however, the absence of such information does not automatically render the accused's consent involuntary." *Hart*, 173 S.W.3d at 147 (citing *Johnson v. State*, 68 S.W.3d 644, 653 (Tex. Crim. App. 2002)).

Based on the totality of the circumstances, the trial court found Hughes' consent voluntary and entered the following findings of fact:

4.      The defendant gave Investigator Wilson and Deputy Arndt permission to enter the residence.

---

[2]Arndt described that the standard procedure is to "inform them, you know, that they have the right to refuse."

. . . .

7. The defendant orally gave Investigator Wilson and Deputy Arndt his permission to search the residence.

8. Investigator Wilson then produced a Consent to Search form.

. . . .

10. The defendant then read and filled in a portion of the form.

11. The defendant signed the form.

12. The defendant did not at any time indicate to Investigator Wilson that he did not understand the form.

13. The defendant did not at any time indicate that he did not read or write the English language.

14. The defendant understood the form.

. . . .

16. Investigator Wilson is a credible witness.

17. Deputy Arndt is a credible witness.

The support for Hughes' argument that consent was involuntary comes essentially from his own testimony, which was contradicted by testimony from Wilson and Arndt and by the written consent form signed by Hughes. The validity of consent to search is a question of fact to be determined from all the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 40 (1996); *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). As the fact-finder, the trial court was free to reject Hughes' testimony. We defer to the trial court on its determination of historical facts and credibility in the absence here of a demonstration that the finding of voluntariness was "clearly erroneous." *Meekins v. State*, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011).

6

We overrule this point of error.

*(2)    Legally Sufficient Evidence Supports the Judgment*

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found the essential elements of possession of a prohibited weapon beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person commits an offense if the person intentionally or knowingly possesses a short-barrel firearm. TEX. PENAL CODE ANN. § 46.05(a)(3) (West Supp. 2012). A short-barrel firearm

7

is defined as "a shotgun with a barrel length of less than 18 inches." TEX. PENAL CODE ANN. § 46.01(10) (West Supp. 2012).

Wilson testified that he immediately knew the shotgun was illegal "due to the short barrel of the firearm. You could tell by looking at it, it has been cut off. It's not factory made." Wilson measured the length of the barrel and testified that it "did measure illegal." Deputy constable Robert White, a trained firearms expert, testified that the barrel length of the "sawed off" shotgun was sixteen inches, instead of the statutorily required eighteen-inch length.[3]

Hughes admits that "the true barrel length was only 2 inches shorter than the legal limit." However, Hughes argues that the evidence is legally insufficient to show that he had the requisite mens rea. Proof of a culpable mental state relies generally on circumstantial evidence, and thus proof of knowledge is an inference drawn by the fact-finder from all the surrounding circumstances. *Gardner v. State*, 736 S.W.2d 179, 182 (Tex. App.—Dallas 1987), *aff'd*, 780 S.W.2d 259 (Tex. Crim. App. 1989).

Jeremy Hughes, Hughes' brother, testified that he had seen the shotgun and had told his father "you know, that it's a little short." They measured the gun "from the outside with the breech open" and Jeremy testified it was "18 and a little under a quarter of an inch." Jeremy then stated, "I have fired that weapon after my dad passed away, and it looks different to me." Jennifer Wascom, Hughes' sister, also testified that the barrel of the gun was longer at one point. Jacqueline Ruff, Hughes' mother, stated that the gun "wasn't cut off" when she gave the gun to Hughes. She implied that the gun was cut after Hughes' arrest.

---

[3]The overall length of the weapon was twenty-nine inches.

Testimony established that the gun belonged to Hughes' father when he was alive. After his death, the gun was given to Hughes by his mother. Hughes' family testified that the barrel length of the shotgun was longer when Hughes inherited it. From the testimony, the jury could reasonably infer that Hughes knew the barrel had been sawed off, given that it had been done sometime between the time when Hughes was given possession of the shotgun and his arrest. The jury was free to reject the suggestion that law enforcement altered the weapon after Hughes was arrested.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational fact-finder could have found the essential elements of possession of a prohibited weapon, including mens rea, beyond a reasonable doubt. The evidence was legally sufficient to support the conviction.[4]

*(3)     The Required Jury Instruction Was Given*

Hughes argues that the parole charge is unconstitutional and cites as authority *Rose v. State*, 752 S.W.2d 529 (Tex. Crim. App. 1987). He claims Section 4 of Article 37.07 of the Texas Code of Criminal Procedure violates the separation of powers and the due course of law provisions of the Texas Constitution. The problem with Hughes' argument is that *Rose* has since been superseded by constitutional amendment and by statute. *Luquis v. State*, 72 S.W.3d 355,

---

[4]In a multifarious argument intertwined within the section discussing legal sufficiency, Hughes suggests that he could have had a mistake of fact defense. *See Dickey v. State*, 189 S.W.3d 339, 341 (Tex. App.—Texarkana 2006, no pet.) (we may overrule multifarious points of error). Hughes did not ask for this instruction and, instead, affirmatively stated that he had no objection to the jury charge. That forfeits any such claim on appeal regarding a defensive jury issue. *See Posey v. State*, 966 S.W.2d 57, 60–64 (Tex. Crim. App. 1998). If, however, a defendant requests a defensive instruction, he or she has the right that the jury be instructed on the requested defensive issue, if it is raised by the evidence. *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008). Here, however, there was no evidence suggesting that Hughes was mistaken about the length of the barrel.

361 (Tex. Crim. App. 2002). Further, Hughes failed to preserve this issue because he did not raise it below. *See Karenev v. State*, 281 S.W.3d 428, 432 (Tex. Crim. App. 2009).

Out of an abundance of caution, we will assess whether the trial court erred in instructing the jury on the issue of parole. Our review of error in this jury charge involves a two-step process. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see also Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). Initially, we determine whether error occurred, and then evaluate whether sufficient harm resulted from the error to require reversal. *Abdnor*, 871 S.W.2d at 731–32.

A trial court must submit a charge setting forth the "law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application to the case." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007).

Section 4(c) of Article 37.07 requires the trial court to inform the jury of the existence and mechanics of parole law and good conduct time. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(c) (West Supp. 2012). The instruction contained within Section 4(c) is required "[i]n the penalty phase of the trial of a felony case in which the punishment is to be assessed by the jury rather than the court, if the offense is punishable as a felony of the second or third degree."[5] TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(c). The Section 4(c) instruction was given in this case. As we have stated before, this instruction is considered mandatory. *Villarreal v. State*, 205 S.W.3d 103, 105 (Tex. App.—Texarkana 2006, pet. ref'd); *Rogers v. State*, 87 S.W.3d 779, 781

---

[5]Possession of a prohibited short-barrel firearm is a third-degree felony. TEX. PENAL CODE ANN. § 46.05(e) (West Supp. 2012).

(Tex. App.—Texarkana 2002, pet. ref'd).  Thus, the court did not err in giving it.  The trial court properly instructed the jury on the mandatory parole charge.

We affirm the trial court's judgment.


                                        Josh R. Morriss, III
                                        Chief Justice

Date Submitted:        March 19, 2013
Date Decided:          March 22, 2013

Do Not Publish